UNITED STATES, Appellee

v.

AUNDRAY MITCHELL, Private First Class, U. S. Army, Appellant

2 USCMA 200, 7 CMR 77

No. 904

Decided February 13, 1953

LT. COL. George E. Mickel, U. S. Army, for Appellant.

LT. COL. Thayer Chapman, U. S, Army, and 1ST. LT. Eugene L. Grimm, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted by general court-martial in Korea of premeditated murder and assault with intent to murder, and was sentenced to dishonorable discharge, total forfeiture of pay and confinement for life. Army reviewing authorities have upheld the findings and sentence. We granted the petition for review.

The principal issue in this case relates to the sufficiency of the law officer's instructions on the elements of the offenses charged. Evaluation of the instructions requires that the evidence be set out in some detail. On the evening of October 18, 1951, the accused was engaged in a dice game with Private Crowley, Private Gray and several other soldiers. A bottle of whiskey purchased by the accused was passed among the participants. During the game, the accused asked Crowley for a "free play." Crowley refused, telling the accused to get his rifle, and adding that "when you play the game, you play it to win or lose." The accused left the group and returned in a few minutes carrying his M-1 rifle. He pointed the rifle at Crowley and demanded, "Now, will you give me my money?" Crowley refused and continued playing. Thereupon, the accused fired the rifle, wounding Private Gray, who was standing next to Crowley. He fired a second time, and Crowley "slumped down on the ground." He attempted to fire a third time, but the rifle jammed. After clearing the jam, the accused fired the third shot and when he attempted to fire the fourth time, the rifle again jammed. The accused then walked over to Crowley, kicked him in the head and stated "I should have killed him long ago." All witnesses to the shooting agreed that the accused had been drinking, but there was varying testimony as to the degree of intoxication.

A CID agent testified that when the accused was taken in custody immediately after the incident, he was intoxicated and in no condition to be questioned. On the following day, the accused confessed to the crime, executing the following statement as concerns the actual shooting:

"  . . . . After I lost all my money in the game, I asked CROWLEY for a play or another shot. CROWLEY started cursing me out and jumped up and wanted to hit me in the mouth. When he jumped and started talking to me I walked away. He said something about having two rounds for his carbine and when he said that I walked away and went to where my M-1 rifle was laying on my sleeping bag and got the rifle. After I got my rifle I came back to where the game was going on. I don't remember if I said anything to him or not, but the next thing I remember was that somebody was screaming and hollering. I don't remember shooting anybody but I went to get my rifle and I was aiming to get me another play or shot in the game or shoot CROWLEY. I was so mad I don't remember exactly what happened. On the morning of 20 October 1951, I was shown four photographs and among them I saw the big guy who Agent Dent told me was CROWLEY and he was the same man I went to get my rifle to shoot, if he didn't give me another play in the game."

Medical testimony established the death of Crowley resulting from the gunshot wound, and the injury to Gray by a "projectile from an Army M-1 caliber 30 rifle."

The accused took the stand to testify in his own behalf, and stated that he had been drinking and that he had no recollection of killing anyone. Several defense witnesses testified that the accused was very friendly in nature, but that he complained of severe headaches; was "observed on occasions to be talk-

ing to himself"; talked frequently in his sleep, and several times "fell down to the floor and started shaking." Two medical officers testified that the accused was legally sane, but one of them added that at the time of the alleged offenses, the accused's "ability may have been impaired by drinking."

At the close of the trial, the law officer instructed the court as follows:

"The court is advised that the elements of the offense charged in the specification of Charge I and Charge I, are as follows, and I am reading from the Proof Section of paragraph 197, page 353, Manual for Courts-Martial, 1951. The elements are:

(a) That the victim named or described is dead; .

(b) That his death resulted from the act or omission of the accused, as alleged; and

(c) Facts and circumstances showing that the accused had a premeditated design to kill; or intended to kill or inflict great bodily harm.

"The elements of the offense charged in the specification of Charge II and Charge II are as follows, and I am reading from the Proof Section of paragraph 213d, page 385 of the Manual for Courts-Martial. The elements are:

(a) That the accused assaulted a certain person, as alleged; and

(b) The facts and circumstances of the case showing the existence at the time of the assault of the intent of the accused to murder."

First, as concerns the instruction on the elements of murder, it is apparent that the law officer in-structed the court in the alternative on the elements of both premeditated and unpremeditated murder. An unlawful killing accompanied by the intent to kill or inflict great bodily harm, but without premeditation, is unpremeditated murder for which the maximum punishment is life imprisonment. The accused was charged with premeditated murder, for which he could have been sentenced to death. See Article 118 of the Code, 50 USC § 712; paragraph 197 of the Manual for Courts-Martial, United States, 1951. The instructions of the law officer permitted the court to find the accused guilty of the greater crime of premeditated murder upon the standard of proof required for the lesser offense of unpremeditated murder. Since there was, in the record, considerable proof of intoxication which would militate against a finding of premeditation, the use of alternative instructions constituted prejudicial error. United States v. Williams (No. 133), 2 CMR 92, decided February 21, 1952; United States v. Rhoden (No. 153), 2 CMR 99, decided February 26, 1952.

On the offense of assault with intent to commit murder, the law officer gave no instructions on any lesser included offense. As already indicated, there was here sufficient evidence of intoxication to raise as an issue in the case the ability of the accused to entertain the specific intent to murder. Accordingly, the law officer should have instructed the court on lesser offenses not requiring the element of specific intent. United States v. Drew (No. 422), 4 CMR 63, decided July 23, 1952; United States v. Avery (No. 809), 4 CMR 125, decided August 6, 1952.

The evidence of record adequately established the offenses of unpremeditated murder and assault with a dangerous weapon, and the essential elements of both offenses were submitted to the court in the law officer's instructions. See United States v. Hunter (No. 359), 6 CMR 37, decided October 17, 1952. Accordingly, the decision of the board of review is reversed and findings on the lesser offenses of unpremeditated murder and assault with a dangerous weapon are affirmed. The case is remanded to The Judge Advocate General of the Army for referral to a board of review for reconsideration of the sentence.

Judges LATIMER and BROSMAN concur.