UNITED STATES, Appellee

v.

JAMES B. GIBSON, Private First Class, U. S. Army, Appellant

3 USCMA 512, 13 CMR 68

No. 1105

Decided December 18, 1953

Lt Col George M. Thorpe, U. S. Army, and 1st Lt Michael E. McGarvey, U. S. Army, for Appellant.

1st Lt Robert A. Forman, U. S. Army, for Appellee.

Opinion of the Court

Paul W. Brosman, Judge:

The accused, Gibson, was tried by general court-martial under a charge of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 50 USC § 712. The specifica-

tion alleged that he shot and killed one Kim Yaun Sil, a member of the military service of the Republic of Korea. At the commencement of the trial, he pleaded not guilty to the charge and specification, but guilty of the lesser included offense of voluntary manslaughter. Subsequently, however, this plea was withdrawn and one of not guilty was entered. He was found guilty of voluntary manslaughter, and sentenced to receive a dishonorable discharge, to forfeit all pay and allowances, and to be confined to hard labor for ten years. The convening authority approved the findings and sentence, and a board of review in the office of The Judge Advocate General, United States Army, has affirmed.

The record discloses that during the late afternoon or early evening of February 17, 1952, the victim of the homicide and the accused occupied adjoining bunkers located in the main line of resistance on a certain Korean hill. An argument began concerning a quantity of charcoal brought up the hill by Kim, which—under existing practices—was to have been shared between the accused and himself. The altercation grew warmer, and the accused was struck, pushed, or kicked in such a manner that he fell down the hillside. The accused thereupon armed himself with an M-1 rifle, and the two men approached one another, the deceased walking in a leisurely manner with his hands in his pockets. When at a distance variously estimated at from "three or four feet" to "seven yards," the accused pumped four rounds into the Korean's body. Kim fell and subsequently died.

The accused testified in his own behalf, and stated that the dispute originated in a disagreement over where the charcoal was to be placed; that Kim addressed him in foul and abusive language; that the victim struck the first blow in the physical encounter; that he, Gibson, became so angry that he remembered nothing after the initial thrust of the deceased; and that his recollection did not return until—following the shooting—he found himself in an aid station.

At the conclusion of the evidence, the law officer properly instructed the court-martial concerning the elements of unpremeditated murder—the crime charged—and in addition he named voluntary manslaughter as a lesser included offense. However, he omitted entirely to inform the court's members of the elements of the latter crime. Nevertheless, the court-martial, after deliberation, returned findings of guilty of voluntary manslaughter.

It is clear beyond peradventure that the evidence adduced at the trial fairly raised the crime found as a reasonable alternative to the unpremeditated murder charged, and thus that the law officer committed error in failing to instruct on the essential elements of the former offense. Does it follow, however, that—as it comes to us—the record here reflects material prejudice to a substantial right of the accused? We think not. We do not at all read the opinions of this Court, cited by appellate defense counsel, as requiring reversal in the case at bar. Specifically we do not believe this result to be demanded by our opinions in United States v. Clark, 1 USCMA 201, 2 CMR 107; United States v. Moreash, 1 USCMA 616, 5 CMR 44; and United States v. Fox, 2 USCMA 465, 9 CMR 95—with which decisions we are in unqualified accord. Rather we are of the view that this case falls within the ambit of our action in United States v. Baguex, 2 USCMA 306, 8 CMR 106, and United States v. Arnovits, 3 USCMA 538, 13 CMR 94. See also United States v. Hunter, 2 USCMA 37, 6 CMR 37.

II

To the hasty reader there may appear to be inconsistency between our action in Clark, Moreash and Fox, as well as in United States v. Burden, 2 USCMA 547, 10 CMR 45; and United States v. Burgess, 2 USCMA 542, 10 CMR 40, on the one hand, and our opinions in and dispositions of the Hunter, Baguex and Arnovits cases on the other. Needless to say we were fully aware of the rule of the Clark and other similar cases when we launched what may be characterized as the Baguex line. However, briefs and argument in the case at bar suggest that confusion has resulted. If this is

**513**

true, it must be dispelled—and the instant case will serve admirably as a vehicle for this purpose.

It is necessary in any discussion of the general problem—and at the outset —to understand precisely the situation involved in each of the cases mentioned. In Clark, the accused was charged with voluntary manslaughter, as proscribed by Article of War 93, 10 USC § 1565. Although furnished no instructions on the elements of lesser offenses, the court-martial there found the accused guilty of negligent homicide, in violation of Article of War 96, 10 USC § 1568. Thereafter, in Moreash, the accused was charged with involuntary manslaughter, as defined by Article 119, Uniform Code of Military Justice, 50 USC § 713. However, he, too, was convicted of negligent homicide, as denounced by Article 134 of the Code, 50 USC § 728, by a court-martial which acted quite without advice concerning the elements of offenses lesser than that charged. In each of these cases, we held the failure to instruct on the lesser offenses found by the court to constitute prejudicial error, and acted to set aside the convictions returned. The precise dispositions made will be examined in greater detail in a subsequent portion of this opinion. However, at this juncture it should be noted that in neither Clark nor Moreash did the Court reach the question of whether the prejudice flowing from the error committed might be purged by action of any reviewing authority.

Recently, in United States v. Fox, supra, we were presented with a situation in which the accused had been charged with unpremeditated murder, in violation of Article 118 of the Code, supra. Here, the court-martial, also without the aid of appropriate lesser offense instructions, convicted the accused of involuntary manslaughter— that is, of a killing committed in the course of an assault, within the terms of Article 119 (b) (2) of the Code. Upon review in this Court, we observed that the accused had been convicted of an offense quite different from that charged, and, as in the Clark case, under a theory wholly divergent from that on which the prosecution's case had been based. From our analysis of the facts, we concluded that the lesser offense of involuntary manslaughter had been fairly raised, and should, therefore, have been the subject of instructional direction. We concluded further, in accordance with Clark, that prejudicial error had been committed. But— be it noted—again we did not advert expressly to any possibility of purging the error of prejudice.

Even more recently we handed down our decision in the case of United States v. Burden, supra. There the accused had been brought to trial on a charge of assault with intent to commit rape, in violation of Article 134 of the Code, supra. In spite of a surfeit of evidence of intoxication in high degree, the law officer furnished the court-martial with no instructions regarding either intoxication or the elements of lesser offenses, particularly those not involving specific intent. However, the trial court, of its own initiative, returned a conviction of indecent assault, also proscribed by Article 134. This Court, of course, deemed the instructional failure to constitute prejudicial error. Dispositively, we directed a rehearing, or, in the alternative, other action not inconsistent with the opinion rendered—observing as we did so that the evidence fairly raised the lesser offenses of indecent assault and simple assault, the latter denounced by Article 128, of the Code, 50 USC § 722. To the same general effect is United States v. Burgess, supra.

### III

Now—and in at least apparent contrast—we approach, first, the case of United States v. Hunter, supra. The accused there had been charged with and convicted of several offenses, among them four separate assaults with a dangerous weapon with intent to do bodily harm, in violation of Article of War 93, supra. It was noted on review here that the law officer had omitted to inform the court of the necessity for a finding of specific intent to do bodily harm. This omission we held to be prejudicial error —but we proceeded to affirm convictions of assault with a dangerous weapon, an included lesser offense not involving

specific intent to do bodily harm. This action was based on the power conferred upon us by Article 59(*b*) of the Code, supra, 50 USC § 646.

Somewhat later, in Baguex, we were faced with the following problem. The accused had been charged with premeditated murder, as defined by Article 118 (1) of the Uniform Code, supra. The law officer supplied no instructions on included lesser offenses. Nevertheless, the court-martial returned a finding of guilt of unpremeditated murder, the offense defined by Article 118(2) of the Code. Upon review of the evidence adduced at the trial, we concluded that there were fairly raised the lesser crimes of unpremeditated murder—that found by the court-martial—and, as well, voluntary manslaughter, in violation of Article 119(*a*) of the Code. However, electing against the direction of a rehearing, a united Court undertook to purge the instructional failure of prejudicial effect by affirmance of the conviction insofar as it extended to guilt of voluntary manslaughter. Of course, our power to do so rested, as in Hunter, on Article 59(*b*) of the Code.

The next step was that taken in United States v. Arnovits, supra. In that case—and insofar as here pertinent—the accused was charged with having made and uttered six checks, with intent to deceive, not at the time intending to maintain sufficient funds in the drawee bank to meet them, and with failing thereafter, wrongfully and dishonorably, to maintain funds therein to meet the same checks. The specifications were lodged, of course, under Article 134 of the Code, supra. In his instructions to the court-martial, the law officer outlined the elements of the offenses charged, but wholly neglected to instruct as to lesser included ones. However, in its findings, the court-martial, with respect to four of the six specifications, those numbered 1 through 4, found the accused guilty only of making and uttering the checks in suit, and with wrongfully and dishonorably failing thereafter to maintain a sufficient balance to cover them. The court thereby declined to find, as to these four checks, that the accused uttered them with an intent to deceive, not

at the time intending to maintain sufficient funds in the drawee bank. As to the specifications numbered 5 and 6, the court found the accused guilty as charged. When the case reached a board of review in the office of The Judge Advocate General, United States Army, that body affirmed the findings returned by the court-martial as to specifications 1 through 4. The board did not affirm the findings as to specifications 5 and 6, as returned by the court-martial, but affirmed as to these only to the extent that the accused had been found guilty under the first four specifications. Consequently, when the case reached this Court, the accused stood convicted, not of the six offenses charged, but of the six lesser offenses just described. In our consideration of the case, we determined that the law officer had erred in failing to instruct concerning the lesser crimes of which the accused emerged from the trial convicted. However—looking to our earlier action in Baguex—we concluded that this failure had been purged of prejudicial effect by the action of the court-martial and the board of review in convicting the accused of those lesser offenses—which indeed were the only ones raised. It is an application of this ruling which we believe to be called for in the present case—for here too, the court-martial returned a conviction of the only possible lesser offense legally and factually raised, although uninstructed as to its elements. The present case, like Baguex and Arnovits, is wholly different from Clark, Moreash, Fox, Burgess and Burden.

IV

In demonstrating the soundness of this position, it would seem that the principal chore has to do with the delineation of a distinction between Clark and Moreash, at the one swing of the pendulum, and Hunter and Baguex at the other. If Baguex is sound—and a united Court thought so—then Arnovits, and the view we propose here, follow as night follows the day. That this Court possesses power to affirm guilt of an offense lesser than that found by a court-martial cannot seriously be

questioned—for Article 59(*b*) of the Code, supra, states unequivocally:

> "Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm so much of the finding as includes a lesser included offense."

We cannot suppose that any substantial question will exist as to whether this Court is to be included within that Article's grant of power to "Any reviewing authority with the power to approve or affirm a finding of guilty."

Yet, is this power of the Court—or, in fact, of any other "reviewing authority"—limited to the affirmance of lesser offenses as to which the law officer had furnished appropriate instructions to the court-martial? The answer to this inquiry must depend, we believe, on a consideration of the effect of Article 59(*a*) of the Code, supra, which commands that a conviction or sentence be not set aside for error of law "unless the error materially prejudices the substantial rights of the accused." Phrased otherwise, the question becomes one of whether the failure of the law officer to instruct as to a lesser offense or offenses fairly raised by the evidence constitutes error, the prejudicial character of which can not be filtered by "Any reviewing authority." The response must be that, in the very nature of the problem, the question cannot be answered unequivocally for all prospective cases. Certainly it has not been answered identically as to all past ones. Herein is involved the distinction between our disposition, say, in Clark and that in Baguex.

The *ratio* of our action in Clark and Moreash was made clear in the latter, when we suggested that: "had the court been fully and properly instructed, its members might well have returned findings of not guilty—that is, they might have deemed the homicide in question to have been a purely accidental killing." It is not inapropos at this point to indicate that our doubts in these cases were well-founded. Upon rehearing, Clark was acquitted. United States v. Clark, CM 347515, May 7, 1952. Although authorized by us to do so, the convening authority in Moreash exercised his discretion not to direct a rehearing, and chose to order the charges dismissed. United States v. Moreash, CM 350776, November 6, 1952. In each of these cases, the possibility that the accused might have been acquitted by a court acting under proper instructions required that the instruction error be regarded as one which could *not* be purged of prejudicial effect by action short of a rehearing under proper instructions or an outright dismissal of the charges.

Still another facet of Clark deserves attention. This Court did not there direct a rehearing as the only means of ultimate disposition, but rather gave to The Judge Advocate General, United States Army, the option of returning the record to the board of review "for further review in accordance with the opinion of the Court." The only possible further action which could have been taken by the board would have been action to dismiss the charges. Although possessed of fact-finding powers not lodged in this Court, the board could not, consistently with our opinion, have reaffirmed the conviction of negligent homicide. Because there was a possibility that a properly instructed court-martial might well have returned a verdict of acquittal, the accused was entitled, in the absence of dismissal, to have his case reheard at the trial level.

In the Fox case in effect we directed a rehearing. There—as stated earlier—the accused had been charged with unpremeditated murder, but convicted of involuntary manslaughter by reason of a killing committed in the course of an assault. Because the basis for our action in setting aside the conviction there was the sharp disparity in theory between the offense charged and that found, the case is, in certain respects, different from others subjected to scrutiny here, although closely related to one aspect of Clark. However, it *does* present a further example of the type of instructional error which cannot be purged of prejudice. Moreover, Fox is not a case for application of the rule that one will not be deemed to have been prejudiced through mislabeling the offense actually charged. That rule depends for its application on the existence of a situation in which the facts

alleged operate to establish an offense under a statute different from that purporting to have provided the foundation for the charge. The finding returned by the court-martial in Fox substituted not only a different statute, but a different factual theory as well. Cf. United States v. Deller, 3 USCMA 409, 12 CMR 165.

We turn again to Baguex. There it was not disputed that the accused had killed his victim during the course of a physical encounter. Moreover, there was no slightest showing of excusable or justifiable homicide. There was, therefore, no legal possibility that he might be acquitted upon rehearing. He was guilty beyond doubt of homicide in some degree. The sole question could only have had to do with the matter of degree. Our review of the evidence led us to conclude that three offenses had conceivably been raised: premeditated murder, unpremeditated murder, and voluntary manslaughter. Neither involuntary manslaughter nor negligent homicide was in any way presented as an alternative to the offense charged—for the reason that the accused, although he might not have intended to kill his victim, had at least intended to inflict great bodily harm. The court-martial, it will be remembered, was afforded no instructions concerning lesser offenses—but, nevertheless, returned findings of guilt of unpremeditated murder. There can be no doubt that the law officer's failure to instruct on such offenses was prejudicial error, not only on the basis of Clark but under all of the other opinions of this Court dealing with the necessity for lesser offense instruction. The problem then was twofold: (1) Whether the error's prejudice might be remedied other than through rehearing. (2) If so, whether this Court should undertake curative action.

The answer to the first question was clearly in the affirmative, for guilt of homicide in some degree was clear—in distinct contrast, be it noted, to the situation understood by us to exist in Clark. Hence, affirmance of guilt in the lowest degree raised as a matter of law would accord the accused every benefit he could expect from proper in-

structions. Concerning the second inquiry we specifically stated: "Whether we thus affirm [the lowest of the lesser offenses raised] in a particular case clearly rests within our sound discretion —for Article 59(*b*) of the Code, 50 USC § 646, is phrased in permissive terms only." We thereupon chose in that case to exercise our discretion in favor of curative action.

In so doing, we were fully cognizant of the "military due process" approach to instructions laid down in United States v. Clay, 1 USCMA 74, 1 CMR 74. Clay undoubtedly secured to accused persons the right to have courts-martial appropriately instructed as required by the Code and the Manual. However—as in the case of any other legal safeguard —the right is secured when the maximum benefits, to the protection of which it is directed, are guaranteed. United States v. Zimmerman, 2 USCMA 12, 6 CMR 12. Because of the distinct possibility of acquittal upon proper instructions, affirmance of negligent homicide in Clark and Moreash would not have secured to the accused involved there the maximum benefit of full instructions, and would, therefore, have denied to them an important right enunciated in Clay. This was not at all the case in Baguex. Because there was no doubt of the accused's guilt in some degree there, affirmance of guilt in the lowest degree raised as a matter of law *did,* as observed above, accord the accused all he could hope to gain by the instructions required by the Code and the Manual. The mandate of Clay was thus obeyed to the letter. This Court has held that error deemed reversible through the doctrine of general prejudice may be the subject of purgation. United States v. Ferry, 2 USCMA 326, 8 CMR 126; United States v. Freeman, 2 USCMA 329, 8 CMR 129. Certainly, we are aware of no reason why *at least certain* violations of military due process may not likewise be cured. This conclusion may give pause to one familiar only with the procedures and thinking of the civilian—as distinguished from the military—practice. However, the approach upon which it is predicated is in no sense a product of the imagination of

this Court or of any member of it. Rather, it is firmly rooted in the unequivocal language of Congress in Article 59 of the Code, supra.

There was also, in Baguex, nothing at variance with our opinion in the later Fox case. Our affirmance of voluntary manslaughter in Baguex in no way substituted a wholly different theory as a basis for conviction. Baguex, be it remembered, had been charged with a premeditated and intentional killing, but was convicted of a killing in which he had intended—but without premeditation—either to cause death or to inflict great bodily harm. In affirming as to voluntary manslaughter, we merely added the *mitigating* element of "heat of sudden passion caused by adequate provocation." He was not thereby left in a position where he could contend reasonably that the conduct of his defense had been embarrassed.

Continuing the present analysis, we turn once more to the Arnovits case, which followed Baguex in point of time, as well as in terms of logic. Arnovits, as stated previously, had been charged with having uttered certain checks with intent to deceive, not at the time intending to maintain a sufficient balance to meet them, and with dishonorably failing thereafter to maintain funds for this purpose. However, the court-martial—without the aid of appropriate instructions—convicted him only of the dishonorable failure to maintain a balance sufficient to cover the checks in question. Considering the evidence of record, we concluded: (1) that the offense of which the accused was found guilty was reasonably raised by the evidence, and (2) that it should have been the subject of instructions. Indeed, we proceeded to determine that the crime found by the court was the *only* lesser offense fairly raised. Looking to our action in Baguex, under which—had Arnovits been found guilty as charged—*we* might have purged the instructional error of prejudice by affirming as to the crime in fact found, it was quite apparent that *the court* had removed all legal prejudice by its finding of guilt of the lesser offense only. If action on our part might have had such an effect, we cannot see how identical

**518**

action at the trial level does not operate to accomplish the same result. Article 59 (*a*) appears to us to demand that we recognize that the result in this type of situation is the same, whether the action leading to it is taken by this Court, by a board of review, by a convening authority, or by the court-martial itself. It was the *result* in Baguex which removed the prejudice—not the fact that the action taken to produce that result came from this Court. It was settled in Baguex—and by a united Court—that the error flowing from a law officer's failure to furnish proper instructions concerning the elements of lesser offenses fairly raised may—in appropriate cases—be purged of prejudicial effect by the Court's affirmance of the lowest of the lesser offenses fairly raised. If such action by this Court removes the prejudice arising from such an omission, would it not be palpably absurd—at least in the usual case—to hold that prejudice, or its fair risk, exists where the court-martial has returned a finding of guilt of that which *this Court* holds to be the lowest of lesser included offenses, although uninstructed concerning the elements of that found? The exceptional situation, of course—and for reasons which have been elaborated fully earlier in this opinion—finds representation in the Clark, Moreash, and Fox cases.

Factually, insofar as here pertinent, the Arnovits case is obviously within the purview of Baguex, rather than that of Clark—for it was undisputed that the accused uttered the checks in question, and clear beyond cavil that he failed wrongfully to maintain a proper bank balance. Arnovits, like Baguex, was guilty of the generic crime charged in some degree, and the only question was one of grade. His acquittal was out of the question, for he was—as a matter of law—guilty of the offense found, at the very least.

In response to this approach in Arnovits, it has been suggested that we are without power under Article 59 (*b*) of the Code, supra, to affirm a conviction of an included offense, lesser than that charged, which was returned *by the court-martial itself* and in the absence of instructions thereon. The short

answer to this proposal is that Article 59(b) is not the basis for the action under scrutiny, for the reason that in such a case, we are not seeking to affirm an offense lesser than that found, but, instead, are affirming the very offense found by the court-martial. This step is taken not in response to the provisions of 59(b), but under the mandate of Article 59(a), prohibiting reversal for error not materially prejudicial to the substantial rights of the accused. Or, to put the matter only a little differently—and perhaps more precisely—the proposed action is based on both Article 59(a) and 59(b), each interpreted reasonably and in light of the procedures and objectives of the other.

From Arnovits we return to the Burden case. The accused there was charged under Article 134 of the Code, supra, with assault with intent to commit rape. In spite of much evidence of intoxication, the law officer failed to advise the court-martial concerning the elements of lesser offenses not involving specific intent. The court, however, through exceptions and substitutions, found the accused not guilty of assault with intent to commit rape, but guilty of indecent assault, also proscribed by Article 134. Considering the record, we determined that the evidence fairly raised not only the lesser offense of indecent assault, but also that of simple assault, the latter defined in Article 128 of the Code. Accordingly, we had no choice but to hold the error prejudicial.

It then became necessary to determine the appropriate disposition of the case. In its factual complex, the case was not squarely within Clark and Moreash, for there was, on the evidence, no doubt that Burden was guilty of some form of assault—either assault with intent to commit rape, indecent assault, or mere simple assault. Nor was the case within Fox. A conviction of Burden for indecent assault, or for simple assault, would not be to convict him under a theory of law and fact wholly opposed to that upon which he was charged. However, action such as that taken in Baguex was entirely possible. We were certainly free to affirm a conviction of Burden for simple assault—for that would most cer-

tainly have given him the most he could possibly expect through full and proper instructions. Of course, we might also have directed a rehearing. Lastly, it was open to us to return the record to The Judge Advocate General, United States Army, leaving to that official the option to remand the case to the convening authority for rehearing, or to return the record to the board of review for consideration of affirmance of simple assault, and purgation thereby of the prejudice flowing from the instructional error. We adopted the latter course—exercising the discretion vested in us, as made plain in Baguex.

We come finally, to the instant case. The accused here was brought to trial on a charge of unpremeditated murder, but convicted instead of voluntary manslaughter—although the court-martial had received no instructions on the elements of the latter offense from the law officer. Patently the offense of voluntary manslaughter was fairly raised as a reasonable alternative to that charged, and should, therefore, have been the subject of appropriate instruction. It is likewise clear, from the recited facts, that no other lesser offense was raised—for the accused, in purposefully firing four rounds directly at his victim from a distance of only a few feet, must indeed be deemed to have intended to kill him, or at least to do him great bodily harm. This is not at all a Clark case, for there can here be no doubt that the accused was guilty of homicide in some degree. The only question was, as in Baguex, in which degree? Viewing the evidence in the light most favorable to the accused, the offense of lowest grade fairly raised was voluntary manslaughter—that found by the court. If the accused had been convicted of unpremeditated murder, we could—again as in Baguex—have removed the prejudice flowing from the instructional error by affirming guilt of voluntary manslaughter. Accordingly, it is our view here—as it was in Arnovits—that the failure of the law officer to instruct as to voluntary manslaughter was error, but that the action of the court in returning a conviction of voluntary manslaughter—under the facts of this case

**519**

—deprived the error of all prejudicial effect. This case, like Arnovits, is clearly distinguishable from Fox in the same manner that Baguex was distinguishable therefrom.

## V

It has been suggested, however, that, if we have proved anything, we have proved too much. In other words—and in terms of logic—it is said that from Baguex and Arnovits, and from the action we propose in the case before us now, we are required to move to a position under which it must be held that a total failure of instructions as to *any* offense does not result in prejudicial error—provided the court-martial in fact returns findings of guilty in the lowest criminal degree fairly raised by the law and the evidence—this regardless of whether the crime found is that charged or one lesser included within it. To put the matter in ·another fashion, that we must repudiate the cases of our Clay line.

We are sure that this is not true. In Clay, it must be remembered, there was a *total* failure of elemental instructions. In the cases with which we have been dealing here, however, the omission touched only those concerning lesser included offenses. There is a vast deal of difference between the two situations —for in the latter the instructions as to the principal offense afforded at least *some* "ascertainable standards of guilt." Cf. Screws v. United States, 325 US 91, 89 L ed 1495, 65 S Ct 1031, 162 ALR 1330. In Clay there were none whatever. There was thus avoided in Baguex and its fellows that wholesale flouting of Congressional intent, a disregard of which in Clay we unhesitatingly characterized as a deprivation of military due process. Although this may reflect only a difference in degree, its critical quality cannot safely be ignored. Thus in Clay we simply find an additional example of the sort of instructional error for the prejudice inherent in which no detergent exists. See Manual, supra, paragraph 87c, page 147.

It has been amply demonstrated, we believe, (1) that inescapable logic demands the result we have reached in the case at bar, and (2) that logic of the same sort does not require that we go further. However, for the sake of argument—and for that alone—let us grant that, viewed solely through the spectacles of a certain conception of logic, the road we are traveling might conceivably lead to conflict with the spirit of Clay, *if we were to follow it all the way*. We are speaking in this argumentative branch of the present opinion, of course, not primarily of ·the mechanical sort of logic typified in conventional thinking by the syllogism, but rather of that course of ideal development based on analogy and through which the law has so often grown. Neither are we speaking, it must be apparent, of logic which is necessarily "sound." Instead we are speaking objectively of the intellectual device under discussion as a *method*—in this instance a *judicial* method. This is the sort of "logic" by which we are challenged, and perforce it must supply the vocabulary in our treatment of this division of the present problem.

With all of this in mind—including the arguendo character of the present comments—our point is simply this: we do not at all propose to follow it to the unfortunate result of conflict with Clay. We do not wish to do so, and we are not required to do so by any precept of juristic philosophy or practice of which we are aware. Logic, and logic alone, does not chart the path of the law. It is in no sense the sole device through which the directive force of a principle may be exerted. Rather it is but one of several methods through and by which judges work. Cardozo, The Nature of The Judicial Process, 30, 31. "The life of the law has not been logic; it has been experience." Holmes, The Common Law, 1. Although we are prone to do so in the usual case, we simply need not choose to follow an exclusively and undiscriminating analogical method in this one. Moreover—as will be demonstrated in a moment—we are in truth precluded from doing so by the previous decisions of this Court.

Article 59(b) of the Code, supra, as we have seen, authorizes "Any reviewing authority . . . [to] approve or affirm so much of the finding as includes a lesser included offense." The Article

520

is wholly silent on the question of whether the exercise of this power shall be confined to those lesser included offenses which have been the subjects of instruction. Conceivably, therefore, and in light of the view taken in many of our earlier opinions, we *could* have limited our power—and that of other "reviewing authorities"—in this particular to those lesser crimes covered by instructions. We are not sure that this would not have been the "logical" course for us to follow. Wisely, however, we chose to act in another way, and in Baguex we affirmed guilt of a lesser offense concerning which no instruction whatever had been furnished—although, of course, the principal crime charged had been fully covered. These phenomena may be thought of as resting at the terminus of one swing of a pendulum.

At the other end of the arc are to be found Article 51(c) and the Clay case, as well as those other decisions of this Court requiring *sua sponte* instructions on lesser offenses reasonably raised by the evidence. Article 51(c) provides that "the law officer of a general court-martial . . . shall . . . instruct the court as to the elements of the offense and charge the court" concerning the presumption of innocence, reasonable doubt, the burden of proof and the like. In the face of pleas of not guilty, the law officer in Clay omitted completely to instruct as to any offense. However, the accused was found guilty of the offense charged. We held this failure to constitute a deprivation of military due process requiring reversal and a rehearing without more. As in the case of Article 59(b)—as to a related matter mentioned in the preceding paragraph—Article 51(c) does not provide *explicitly* for instruction on lesser offenses raised by the evidence as reasonable alternatives to that charged. Conceivably here too, therefore, and in light of special problems of personnel frequently said to be implicit in the administration of military justice—as distinguished from its civilian counterpart—we *could* have interpreted the latter Article to have required elemental instruction only as to the offense charged. Wisely again, we did not do

this, but rather—and in a lengthy line of decisions—chose to understand the legislative language to demand *sua sponte* instructions on all reasonably raised lesser crimes.

We are sure that in what has been said thus far there is bound up an irrefutable demonstration of the proposal that logic of the sort of which we have been speaking cannot possibly solve the problem before us now. What a united Court has said Article 59(b) means is, in this sense, "logically" inconsistent with what the same judges earlier had said Article 51(c) meant. To put the matter otherwise, the interpretation we placed on the former Article in Baguex cannot at all be said to follow "logically" from the meaning we had earlier given the latter in the Clay line. If we look at Clay and its heirs and assigns from the position of Baguex, Clay is wrong; if we view Baguex from the vantage point of Clay, Baguex is wrong—that is, wrong in terms of the sort of logic by which we are questioned here.

Certainly, we are not suggesting that either is wrong. Our point, indeed, is that both are right. Each is merely "illogical"—and only so, of course, when measured solely in terms of the other. The Court can only have chosen to adopt a standard other than that of analogue when, in the very teeth of the line of instruction cases beginning with Clay, it deliberately reached the conclusion it expressed in Baguex. It chose, we believe, to adopt the standard of *function*—that is, that of a sound and workable result. It chose to furnish a solution which was genuinely called for by the exigencies of the military justice scene, and which, at the same time, amply protected the substantial rights of an accused person. In short, it chose to approach the problem pragmatically—that is, practically.

The net of all this is that, within the area under discussion, there exist two distinct lines of authority, each rooted in a firm and sensible foundation; the one in Article 51(c) and Clay; the other in Article 59(b) and Baguex. These lines are in a sense parallel, but the end of one comes to rest at the beginning of the other. Since neither can be pursued to the limit of

its logic, they can never become truly parallel. In terms of "logic," they are irreconcilable *if unduly extended*. In terms of practice, however—that is, of utility— their conflict is susceptible of an entirely sound and workable solution.

Granting—still argumentatively—the logical inconsistency of 51(c) and 59 (b), as interpreted by this Court, we must determine where to place the instant case, and its brother Arnovits, as between the two Articles. There are those who would push Baguex no further than its facts, but we would do so. We believe the answer to be found in Article 59(a), which provides that "a finding or sentence . . . shall not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." To us, Gibson was not prejudiced here, although Clark and Moreash, for example, would have been, had we acted other than we did in their cases. On the other hand, we will not carry Article 59(a) over to a Clay situation, in which there were no instructions whatever as to elements—for in terms of function, of result, of policy, of what you will, it simply does not make sense to do so. We are sure that the line we are drawing in the solution of this problem is infinitely preferable to its alternative—as being at once more nearly responsive to the deeds of military justice and wholly consistent with the spirit of the Uniform Code.

## VI

In final summation, let us approach the present problem in terms of legislative intent. Let us suppose at the outset that an accused is charged with the commission of offense A. Included within offense A are offenses B and C, the former of greater gravity than the latter. Both of these and no more are raised by the evidence adduced at the trial as reasonable alternatives to A— that is, the crime charged. It must also be understood that there is no basis for a finding of either excuse or justification. The court-martial is instructed fully as to A, but no sort of mention is made either of B or C. More specifically now, let us posit, first, that the

court-martial finds the accused guilty of B, and, secondly, let us assume that its members find him guilty of C. In the first situation, clearly we may purge the error by affirming guilt of offense C—and this despite the total absence of instructions as to it. All members of the Court must agree to this, since explicit authority for the assertion is found in the Baguex case, and each signed the opinion there without reservation. Yet it is argued as to the second example that any sort of purgation is an impossibility, that a rehearing must be ordered, and that we are without authority to affirm guilt of offense C—this, although, by definition, C is the lowest offense of the variety involved of which the accused may be said to be guilty under the law and the facts. And why is this argued? Because and only because there has been no instruction as to C. Yet under the facts of the earlier illustration, Baguex would permit affirmance of the selfsame offense— equally without instructional direction. The "logic" of this position is indeed difficult of acceptance. We are told, however, that Congress in Article 59(b) has provided for this action in the case of a lesser included offense, but not otherwise.

It must be apparent to all that the the only possible theory on which this Court may properly—in either of the two supposititious cases—affirm guilt of offense C involves the notion that the error arising from instructional failure *was* purged. Purgation is effected within the area with which we are concerned through an attribution to the accused of guilt of the lowest offense compelled by the law and the facts. The *source* of this attribution—that is, of purgation —is wholly irrelevant and immaterial. Thus, the question is, *was* the error purged—not at all, *who* purged it. Article 59(a) and Article 59(b) are closely related, and are parts of an indissoluble whole. If this Court was correct in its ascertainment of legislative intent as to Article 59(b) in Baguex, is it not palpably absurd to charge against Congress a desire to cause purgation—with all of its important practical consequences in the type of case with which we are dealing—to hinge on an irrele-

vant, a totally illogical consideration? In the absence of more convincing evidence, than we are furnished here, we should not—we must not—attribute to the national legislature an illogic of such massive proportions.

## VII

It has been said—and with vigor—that the view we propose here operates to undermine effectively the instructional framework laboriously erected by this Court in many sound decisions. Of course, this is untrue. We are as attached to the core of these cases as we ever were—but at the same time we are quite opposed to the notion of riding a good horse to death. This unselective criticism, in truth, is compact of the very stuff of which bugaboos are made, and to express it is to talk through one's hat. Our disposition of this case no more saps our instructional edifice than did our Marsh case strike at the vitals of the administration of discipline in the armed services. See United States v. Marsh, 3 USCMA 48, 11 CMR 48. To both chimeras we accord the mercy of our silence.

Accordingly the decision of the board of review is affirmed.

QUINN, Chief Judge (concurring in the result):

I have no difficulty in agreeing with the result reached in the principal opinion. Voluntary manslaughter was clearly and reasonably raised by the record and the court's finding is certainly supported by the evidence. On these facts, the accused would be prejudiced by the law officer's failure to instruct upon the elements of the above offense, only if it could reasonably be said that, had the instructions been given, there was an actual probability that the accused would be convicted of a lesser offense, or acquitted. Such a finding could be returned here, only if the members of the court ignored their oath to faithfully and impartially try the case according to the evidence, their conscience, and the law. It is true that courts and juries on occasion do acquit persons whose guilt is clearly established. But it does not follow that any accused, clearly guilty of an offense of which he is convicted, is entitled to have his conviction set aside on the basis of such a possibility. Beyond this, we need not go. Accordingly, I concur in the result.

LATIMER, Judge (dissenting):

I dissent.

I have many criticisms of the principal opinion, but in view of its length and admitted illogic, it would serve no useful purpose to do more than mention some and reply to others. This for the reason that I present my conclusions on our holdings in previous instruction cases and thus the reader is afforded an opportunity to weigh the merits of the conflicting concepts.

Generally, I will group my critical observations into three subdivisions. First: While the opinion marches assuredly along with positive statements as to what we held in specific cases, I encounter much difficulty in analyzing judicial decisions except by interpreting the language used by the author judge and I am unable to find in any case written by me, and in most of those written by my associates, words which support the belatedly conceived theory announced by the principal opinion. In that connection it is singular to note that there is not a single quote in that opinion which substantiates the principles proclaimed. Therefore, if in my opinions I held as the majority contend, I did an excellent job of concealing it from everybody, including myself. In addition, if the Chief Judge in his dissenting opinions has entertained the theories now advanced, then his writings too conceal his thoughts. In leaving this subject I pose but do not answer the question: How much of the reasoning advanced by the opinion is based on a newly discovered theory not within the contemplation of any judge when the earlier cases were written?

Second: Without any attempt to include all, I extract the following erroneous principles from the opinion. The mere statement of them seems to me to establish they are contrary to any acceptable standard of criminal jurisprudence. (a) We, an appellate court without fact-finding powers, may conclude

**523.**

the accused is guilty of the offense of which he is found guilty, so we can affirm the conviction regardless of the fact that the court-martial was uninstructed and unconfined in its deliberation; (b) we may add mitigating elements to sustain a finding which is based on a conceded error; (c) the grant by Congress of power to affirm a finding of a lesser included offense, to correct errors infesting the findings on the greater offense, includes the authority to disregard the error and affirm the principal offense; (d) an error can be purged by the forum making it without any corrective measures being taken; (e) a denial of due process (a failure to grant an accused a fair trial) does not necessarily violate Article 59(a) of the Uniform Code of Military Justice, 50 USC, § 646; and (f) the lack of a fair trial can be purged, by this Court acknowledging its presence, and, then taking no action to correct it.

Third: The construction given to Article 59(b) is not in harmony with the Congressional intent as indicated by the views expressed in the Congressional hearings. I quote from pp 1174, 1175 and 1176 of the Hearings before the House Armed Services Committee, 81st Congress, 1st Session, on H. R. 2498, in so far as the discussions relate to that subsection:

"Mr. Brooks. That subsection (b) means that if a man is tried for murder, and they find an error committed, the appellate court could still hold him or find him guilty of manslaughter?

"Mr. Larkin. That is right.

.    .    .    .    .

"Mr. Philbin. Subsection (a). How about subsection (b), what is your reasoning on that?

"Mr. Larkin. Well, that is to give the reviewing authorities latitude in the review of a case where a man has been charged with let us say murder and he has been found guilty of it but the reviewing authority finds that one element of the crime of murder has not been proved but without that element a lesser included offense has been proved.

"And while we do not in our puni-

tive articles have degrees of crime in the sense of grand larceny in the first or second degree as you find in civil courts, the idea is analogous. For instance, in a grand larceny in the first degree charge, assuming you had one where one of the elements was that property exceeding $500 in value was taken and the man is convicted of it and the reviewing authority feels they made an error in the value and it was only $250 and they would be perfectly satisfied he was guilty of grand larceny in the second degree and not in the first, they could reduce the finding to a lesser included offense, just as the court can itself when it tries the case and finds the man guilty of a lesser included offense than the one he is charged with.

.    .    .    .    .

"Mr. DeGraffenried. Mr. Larkin, as I see it, the only difference here is if they find him guilty of a lesser offense instead of sending it back for a new trial and having the whole thing to go over again they just save that time and expense and everything else by reducing it to the lesser offense and fixing the penalty.

"Mr. Larkin. That is right.

"Mr. Brooks. This is not changed from what the present statute is, is it?

"Mr. Larkin. That is right, nor is it changed from the civil practice."

I protest with some vigor largely because it is disheartening to find many of the good principles announced in our previous cases overturned and a concept which we have previously rejected, revitalized. It may be that I am overstating the effect of the new theory but if so, it is because I fail to see clearly my brothers' path of the future. To make my position clear, I shall attempt to point out that the trail we were blazing through the instructional area was reasonably straight and well marked, and then I will attempt to show why I believe we have deviated and lost our sense of direction. We, as a newly created court, have an opportunity to create a body of law which can be the embodiment of clarity and simplicity or which may become a framework of

524

confusion and bewilderment. To date, I believe we have succeeded in laying down understandable rules of law and in so doing we have carved out seven principles in the instructional area, now well known and clearly identifiable. Those seem to be adequate for good administration; and for us now to wander afield and reverse ourselves cannot help but bring about a state of confusion. While at times it is necessary to recognize fine differences between principles, a decision which attempts to refine too highly has the effect of a reversal. There are some distinctions which the ordinary mind cannot discern and today's opinion either clashes head-on with the rationale of other opinions or draws a difference I am unable to see.

One of the principal adverse effects of the theory asserted is that it denies an accused a fundamental right accorded him by the Code and it permits courts-martial and reviewing agencies to make and dispose of findings of guilt according to their whims and not according to acknowledged legal standards. I have always understood that an accused in a military court, or a defendant in a civil court, has the right to have the triers of fact, under proper instructions, first determine whether all essential elements of the offense have been established beyond a reasonable doubt. If that determination is in any way infested with prejudicial error the finding or verdict, as returned, cannot stand. The vice of the error committed in the trial forum eats into that particular finding of guilt and it must be set aside or a fatally defective finding is affirmed by us. When an instructional deficiency supports a verdict in civilian jurisdictions, an appellate tribunal ordinarily has no alternative other than to reverse the conviction and remand the case for a new trial. Because we occupy a comparable status and are limited to reviewing errors of law, we should be bound by the same limitations unless we can find some authority in the Uniform Code of Military Justice to support a grant of greater power to us. As I will hereinafter develop, we have been granted some additional authority but regardless of how far it is stretched, it cannot legally be made to cover as wide an area as the Court's opinion marks out.

My study of our cases on instructions, and the principles announced therein, persuades me that they have fixed the following rules of military law: (1) A law officer is required to instruct on all essential elements of the offense charged; (2) he must instruct on the elements of all lesser included offenses reasonably placed in issue by the evidence; (3) appellate agencies cannot affirm the finding made by the court-martial if it is based on erroneous instructions regardless of the sufficiency of the evidence to sustain the finding; (4) a finding of guilty of a greater offense, predicated on instructions defining only a lesser offense, cannot be affirmed by a reviewing agency; but a reduction to the offense defined can be accomplished and, as reduced, affirmed; (5) if there are instructions on the principal offense and there are no instructions on included offenses, a reviewing authority may affirm so much of the finding of the principal offense as includes the lowest of the lesser included offenses reasonably raised by the evidence, if the court-martial's findings embrace the elements of that offense; (6) if a court-martial returns a finding on an offense upon which it is uninstructed so that it is unguided and unconfined as to elements, we must reverse; and (7) if the evidence raises, and instructions are given on only the greater offenses, and the court-martial returns a finding of guilty on a lesser offense, the error is beneficial to the accused and he cannot complain on appeal. I shall discuss these in the order stated.

I

Article 51(c), Uniform Code of Military Justice, 50 USC § 626, specifically requires that the law officer of a general court-martial, or president of a special court-martial, instruct the court-martial on the elements of the offense charged and this Court has required strict compliance with its terms. In addition, we have augmented the provision by requiring that all instructions must be given in the presence of accused and his counsel. In the early case of

**525**

United States v. Clay, 1 USCMA 74, 1 CMR 74, we accorded Article 51(c) a paramount place among those procedural requirements laid down by the Code which insure a fair trial to an accused and which we chose to designate as "military due process." At that time the denial of the right was regarded as of some importance to the accused as we considered it a valuable privilege granted by Congress. Our views then were expressed in the following words:

"We may have belabored the importance of the question herein involved. If so, it is to impress on courts-martial the undesirability of short-cutting the plain mandate of Congress. To follow strictly the required procedure may at times seem unimportant, but the only way by which Congress can make certain what it deems important is by saying so in its legislative pronouncement. In this instance, it proclaimed that the giving of instructions was a valuable right, the court-martial crashed through that mandate, and now we are asked to say that right was unsubstantial. It was for Congress to set the rules governing military trials. It legislated on the subject and not without adequate consideration. We are not concerned with the wisdom of the enactment, but we might suggest that there are many reasons which may have prompted Congress to demand that instructions be given to members of courts-martial . . . ."

The Clay case, supra, involved a complete failure to give any instructions whatsoever. The principles enunciated therein, however, are apropos in those instances where the instructions, as given, failed to include an essential element or incorrectly included one. Accordingly, we have reversed many cases in which the findings, as affirmed by intermediate reviewing authorities, were predicated upon an instruction given in which the elements of the offense with which accused was charged were either omitted or incorrectly stated.

In United States v. Strong, 1 USCMA 627, 5 CMR 55, the accused was charged with voluntary manslaughter. The instructions given by the law officer on this offense were inadequate but the court-martial was instructed to refer to the applicable provisions of the Manual. Passing by the comments we made in answer to the arguments of Government counsel that there was no prejudice, I quote from Judge Brosman's opinion:

"We are not persuaded by these arguments. The Uniform Code, 50 USC § 551–736 in clear and unmistakable terms, commands that the law officer of a general court-martial shall, in the presence of the accused and counsel, instruct the court as to the elements of the offense. This constitutes one of the most significant respects in which the current dispensation of military justice differs from the old . . . ."

See United States v. Russell L. Williams, 1 USCMA 186, 2 CMR 92; United States v. Rhoden, 1 USCMA 193, 2 CMR 99; United States v. McRory, 1 USCMA 247, 3 CMR 8; United States v. Perna, 1 USCMA 438, 4 CMR 30; United States v. Gilbertson, 1 USCMA 465, 4 CMR 57; United States v. Soukup, 2 USCMA 141, 7 CMR 17; United States v. Grossman, 2 USCMA 406, 9 CMR 36; United States v. Davis, 2 USCMA 505, 10 CMR 3; United States v. Petersen, 2 USCMA 645, 10 CMR 143; and United States v. Brown, 3 USCMA 98, 11 CMR 98.

In only one class of cases have we held that failure to instruct properly on the elements of the offense charged and found did not require reversal. That class consists of those cases where a plea of guilty had been interposed and we concluded the plea eliminated any possibility of prejudicial error. See United States v. Lucas, 1 USCMA 19, 1 CMR 19; United States v. Goodrich, 1 USCMA 26, 1 CMR 26; United States v. O'Brassill, 1 USCMA 27, 1 CMR 27; United States v. Bishop, 1 USCMA 29, 1 CMR 29; and United States v. Jones, 1 USCMA 276, 3 CMR 10.

II

The cases supporting the second rule are just as numerous as those support-

ing the first rule. In United States v. Clark, 1 USCMA 201, 2 CMR 107, which was the first opinion dealing with instructions on included offenses, we discussed the Code and the Manual provisions dealing with the necessity of giving complete instructions. In that case we upheld the contention that instructions must be broad enough to cover the included offense. In developing that rule, we stated in that case:

". . . Correct procedure under military law requires that, unless the evidence excludes any reasonable inference that a lesser crime was committed, the duty of the law officer is to carve out instructions covering the offense. He is the judge in the military system and he must furnish to the court the legal framework of all offenses which the evidence tends to establish. Unless he does so the accused has been denied a right which we conclude was granted by Congress and error as a matter of law follows."

That principal has been consistently applied in subsequent cases and the manner of application may be determined by the language quoted.

In United States v. Lowery, 2 USCMA 315, 8 CMR 115, the accused was charged with the offense of desertion, under Article 85 of the Uniform Code of Military Justice, 50 USC § 679. The evidence reasonably raised the issue of absence without leave but the law officer failed to instruct on that offense. Judge Brosman speaking for the Court cast aside arguments that there was no prejudicial error by saying:

". . . The law officer did not instruct the members of the court on the elements of this lesser included offense. This failure was, of course, error, and presented a fair risk of material prejudice to the substantial rights of the accused, for the reason that it is impossible to evaluate the effect of omission of instructions as to the proper lesser included offense. United States v. Ollie C. Williams (No. 251), 1 USCMA 231, 2 CMR 137, decided March 14, 1952; United States v. Sheehan (No. 776), 1 USCMA 532, 4 CMR 124, decided August 6, 1952; United States v. Avery (No. 809), 1 USCMA 533, 4 CMR 125, decided August 6, 1952; United States v. Lookinghorse (No. 1124), 1 USCMA 660, 5 CMR 88, decided August 29, 1952."

Also see United States v. Cline, 2 USCMA 411, 9 CMR 415, and United States v. Oliver, 2 USCMA 613, 10 CMR 111 (failure to instruct on the offenses of absence without leave included in desertion charges); United States v. Lookinghorse, 1 USCMA 660, 5 CMR 88; United States v. Avery, 1 USCMA 533, 4 CMR 125; and United States v. Warren, 2 USCMA 59, 6 CMR 59 (failure to instruct on offenses included within a charge of assault with intent to commit murder); United States v. Drew, 1 USCMA 471, 4 CMR 63 (failure to instruct on offenses included within a charge of assault with intent to commit voluntary manslaughter); and United States v. Sheehan, 1 USCMA 532, 4 CMR 124 (failure to instruct on offenses included within a charge of wilful disobedience of a lawful order.)

Again, in connection with included offenses, we were faced with determining the effect of the failure of the law officer to give instructions on the included offense to which a plea of guilty was interposed. In the companion cases of United States v. Glover, 2 USCMA 164, 7 CMR 40; and United States v. Estes, 2 USCMA 171, 7 CMR 47, the Court (Judge Brosman dissenting), applied the rule of the Lucas case and held that it was not prejudicial error to refuse to instruct on the lesser included offense if the accused had judicially admitted his guilt. Aside from those cases, we have uniformly insisted on instructions on all offenses in issue.

III

The third rule announces another principle to which the Court has steadfastly adhered. It is that appellate agencies cannot affirm a finding based on inadequate instructions regardless of the sufficiency of the evidence to sustain the finding. In United States v. Clay, supra, which involved a prosecution for a simple disorder, we specifically rejected any contention that failure to instruct could be cured by a finding

**527**

by a court-martial based on compelling evidence or by a board of review's independent finding. The rule we there announced is found in the following quote:

". . . We are not impressed with the argument made by the board of review that it was clothed with authority to determine the sufficiency of the evidence and that it found the failure to instruct was not prejudicial because the evidence overcame the presumptions of innocence; that the elements were established beyond a reasonable doubt; and that it was satisfied the court or the board of review could not have made a finding other than that of guilty. Assuming without deciding that the evidence compels such a finding, we are, nevertheless, required to hold the error materially prejudiced the substantial rights of the accused, for the reason that we cannot say one of the historic cornerstones of our system of civil jurisprudence is merely a formality of military procedure. If Congress specifically grants what it considers to be a substantial right, we cannot deny the authoritative requirement by refusing to recognize it. There is importance attached to a benefit given by Congress, and the importance should not be diluted by an assumption that doubtful cases call for its protection but those appearing certain permit it to be discarded."

In United States v. Gilbertson, supra, we were faced with instructional deficiency in the failure of the law officer to give the standards of misbehavior. Our reasoning for reversal was, in part, that we could not ascertain what verdict the court-martial might have returned had it been advised in a proper manner. The part of the opinion applicable to the point under discussion is found in the following quotations:

"... The accused and his counsel have the right to hear instructions which form the framework of law to which the evidence must be fitted. These instructions should be clear, precise and unambiguous. If full instructions are not given in open court,

528.

defense cannot evaluate their correctness and has no opportunity to object. Further, if no affirmative statement of the instructions appears in the record, reviewing authorities are handicapped in ascertaining the legal standard applied by the court in its deliberations on the findings.

•  •  •  •  •

"The inadequacy of the instructions here requires reversal. 'It is not for us to determine what the court members would have found had they been properly advised on the elements.' United States v. Rhoden, (No. 153), 1 USCMA 193, 2 CMR 99, decided February 26, 1952; Little v. United States, 73 F2d 861, 866 (CA 10th Cir). The decision of the board of review is reversed as to the findings on the misbehavior charge and the case is remanded to The Judge Advocate General for rehearing on that charge or for referral to a board of review for reconsideration of the sentence."

In United States v. Rhoden, supra, we again indicated our views that we could not make a factual determination which in the first instance belonged to the court-martial. There we stated:

"Another contention posed is that the evidence was sufficient to support the greater offense, and therefore, there was no prejudice flowing from failure to give proper instructions. It is not for us to determine what the court members would have found had they been properly advised on the elements. It is sufficient to show prejudice, that in arriving at the findings there was a reasonable possibility they were misled by erroneous instructions. The duty was theirs to determine whether or not the evidence was sufficient to prove each and every element beyond reasonable doubt and we can not make the finding for them, nor can we surmise or speculate on what they would have determined under appropriate instructions. The accused is not required to convince us that the error did influence the finding of guilty. •  •  •  "

The same rationale can be found in

United States v. Drew, supra, wherein we reasoned as follows:

"The failure of the law officer to define voluntary manslaughter, to indicate the legal effect of proof of intoxication, and to define the applicable lesser included offenses raised as alternatives by the evidence constitutes error. It is not for us to determine precisely what the court would have found had it been correctly instructed. Considering the evidence, there is a reasonable possibility that, had full and correct instructions been given, the court would have found petitioner guilty of a lesser offense. This is sufficient reason upon which to base a finding of prejudice. The decision of the board of review is reversed and a rehearing is ordered."

## IV

The fourth principle outlined above deals with our holding in, and disposition of, the cases when the instructions are sufficient only to define an included offense and the court-martial returns a finding of the greater offense. In practically every instance, we have either affirmed a finding of the lesser offense or reversed and returned the record to The Judge Advocate General of the appropriate service for reference to a board of review for consideration of a possible finding of guilt of the included offense. The concept which prompted that action was that the court-martial had found the accused guilty of the crime defined by the law officer and, in so doing, had passed on the sufficiency of the evidence to establish beyond a reasonable doubt each mentioned element. For that reason and because we, or the boards of review, were authorized by Article 59(b), Uniform Code of Military Justice, to affirm so much of a finding as includes a lesser included offense, that procedure could be adopted without destroying the accused's right to have the court-martial measure the facts by the legal standards set by the law officer.

In United States v. Cromartie, 1 USCMA 557, 4 CMR 143, the accused was charged with assault with intent to do bodily harm with a dangerous weapon and was found guilty by the court-martial as charged. However, the instructions given covered only the elements of assault with a dangerous weapon and failed to cover all elements of the greater offense. We there held:

". . . As to assault with a dangerous weapon in violation of Article of War 96, supra, we note that the instructions of the law officer do embody the essential elements of that offense. It follows that the decision of the board of review must be reversed as to the specification of Charge I and the Charge. . . . The record is returned to the Judge Advocate General, United States Army, *for reference to the board of review for consideration of the possibility of guilt of a lesser included offense on the assault charge or for other action not inconsistent with this opinion.*" [Emphasis supplied.]

In United States v. Hunter, 2 USCMA 37, 6 CMR 37, the accused was charged and convicted of several offenses. One of the charges was assault with a dangerous weapon with intent to do great bodily harm. We stated:

"The record established beyond reasonable doubt that the offenses of assaults with a dangerous weapon were committed, and that the instructions were appropriate for those offenses. The court-martial having found the accused guilty, it follows that all elements involved in the lesser offenses were considered and proven. Under Article 59(b), Uniform Code of Military Justice, 50 USC, § 646, we have power to affirm or approve so much of the findings as includes the lesser included offense and we, therefore, affirm findings of guilty of assaults with a dangerous weapon alleged under Charge II. . . ."

United States v. Long, 2 USCMA 45, 6 CMR 45, also involved several offenses including an assault with a dangerous weapon with intent to do great bodily harm. Reaffirming our previous rule, we stated:

"The last issue in relation to the instructions concerns the statements of the law officer relative to the of-

fense of assault with intent to do great bodily harm with a dangerous weapon. Here, he read verbatim the elements of the offense from paragraph 1801 of the Manual for Courts-Martial, U. S. Army, 1949. The element of specific intent to do bodily harm was thus omitted. This was prejudicial error that requires us to set aside this finding. United States v. Hopf (No. 372), 1 USCMA 584, 5 CMR 12, decided August 14, 1952; United States v. Cromartie (No. 374), 1 USCMA 551, 4 CMR 143, decided August 6, 1952. However, we affirm so much of the finding of guilty as involves the lesser included offense of assault with a dangerous weapon. United States v. Hunter, (No. 359), 2 USCMA 37, 6 CMR 37, decided this day."

In United States v. Mitchell, 2 USCMA 200, 7 CMR 77, the accused was convicted of premeditated murder and assault with intent to murder. We held the convictions were based upon erroneous instructions and reduced them to lesser offenses. We stated:

"The evidence of record adequately established the offenses of unpremeditated murder and assault with a dangerous weapon, and the essential elements of both offenses were submitted to the court in the law officer's instructions. See United States v. Hunter, (No. 359), 2 USCMA 37, 6 CMR 37, decided October 17, 1952. Accordingly, the decision of the board of review is reversed and findings on the lesser offenses of unpremeditated murder and assault with a dangerous weapon are affirmed. The case is remanded to The Judge Advocate General of the Army for referral to a board of review for reconsideration of the sentence."

In all of the foregoing cases our action in reducing the offense to a lesser degree resulted in merely conforming the finding returned to the instruction actually given. Thus, we reduced the offense, and in effect, corrected the findings so that they reflected those which the fact-finders had actually made.

V

We have, however, carved out another

principle peculiar to our system, and have exercised our right, or permitted boards of review to exercise their rights, under the authority of Article 59(b), Uniform Code of Military Justice, which grants any reviewing authority the power to affirm so' much of the finding as includes a lesser included offense. These holdings bring me to a discussion of the fifth principle, and, I particularly direct attention to the fact that in every case the findings of the court-martial reflect clearly that every element of the offense which we affirmed was considered by the court-martial and found to be proven beyond a reasonable doubt.

In United States v. Craig, 2 USCMA 650, 10 CMR 148, the accused was convicted of premeditated murder, robbery and aggravated assault. The instructions failed to include an explanation of the effect of intoxication upon intent and premeditation but they included the element of the principal offense. We reversed but affirmed the included offenses in an opinion which stated:

"Before pursuing a discussion on intoxication, we dispose of the contention that the law officer erred in not instructing on the offenses included within the premeditated murder charge. Accused was charged with the premeditated murder of Private First Class Donald J. Hammond, by shooting him with a carbine. At the conclusion of the trial the law officer gave full and complete instructions on the offense of premeditated murder, specifically defining the word premeditation. In addition, he explained the elements of an unlawful killing without premeditation and at the request of defense counsel stated that the latter instruction covered the offense of unpremeditated murder . . . ."

* * * * *

"In accordance with our powers under Article 59b, 50 USC, § 646, we affirm a. finding of guilty of the lesser included offenses of unpremeditated murder under Charge I, an assault with a dangerous weapon under Charge II. In addition, the assault with a dangerous weapon under Charge III is affirmed. Because of

530

the reduction in two of the principal offenses, we return the record to The Judge Advocate General of the Army for reference to a board of review for reconsideration of the sentence in the light of our holding."

In United States v. Bigger, 2 USCMA 297, 8 CMR 97, the accused was tried and found guilty of premeditated murder. The board of review reduced the finding to unpremeditated murder holding the evidence failed to support the greater charge. We stated:

". . . Under the instructions on premeditated murder, the court-martial was required to find, beyond a reasonable doubt, every element of unpremeditated murder plus the one additional element of premeditation. The board of review, after carefully analyzing the evidence and measuring it by the appropriate standards for the particular offense, reduced the findings to unpremeditated murder only because they believed the record did not establish premeditation beyond a reasonable doubt. Thus the board only approved so much of the finding as it believed justified by the record which it is commanded to do by the Uniform Code of Military Justice, supra. It necessarily follows that evidence to support every element of unpremeditated murder was found present by both the court-martial and the board of review. Hence the law officer's error, if error it be, was cured by the board's action."

In United States v. Cline, supra, the accused was charged with and convicted of, absence without leave with intent to avoid hazardous duty. In giving his instructions, the law officer neglected to define or mention the included offense of absence without leave. Our reasoning and disposition may be gleaned from the following language:

"Under these circumstances we are of the opinion that there was substantial evidence indicating that the lesser included offense of simple unauthorized absence was committed. This issue should have been presented to the court for determination."

•    •    •    •    •

"We find that the law officer's in-

structions concerning the lesser offense were prejudically inadequate. The finding of desertion cannot stand. However, it is unnecessary to order a rehearing since there is indisputable and substantial evidence that the accused did commit the offense of absence without leave in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680.

"The case is remanded to The Judge Advocate General of the Army for return to the board of review for consideration of the appropriateness of the sentence and for such other proceedings not inconsistent with this opinion as may be necessary."

The ruling in *Cline, supra,* was reaffirmed in United States v. Oliver, supra. The accused was convicted of desertion upon facts which the majority concluded reasonably raised absence without leave. No instruction was given on that offense and while we reversed the findings on desertion we did not grant a rehearing. In that opinion we stated:

". . . In connection with his instructions with respect to the elements of the crime charged, the law officer omitted to instruct the members of the court-martial concerning the elements of the lesser included offense of absence without leave, defined by the Uniform Code, supra, in Article 86, 50 USC § 680. From the preceding recitation of the evidence adduced at the trial, and from what we have held earlier herein, it is patent that we must hold that absence without leave was fairly raised as a reasonable alternative to the desertion charged. This being so, the failure of the law officer in this particular constituted prejudicial error. United States v. Lowery (No. 683), 2 USCMA 315, 8 CMR 115, decided March 13, 1953.

"It follows from what has been said that the findings of guilty of desertion must be set aside. However, it is apparent that the accused is guilty of an absence without leave of 33 days duration. Accordingly, the case is remanded to The Judge Advocate General, United States Army, for reference to a board of re-

view for further consideration in accordance with this opinion."

I place United States v. Baguex, 2 USCMA 306, 8 CMR 106, in this category, and, while the language used in that opinion does not portray clearly the factual and procedural matters made important by this decision, consideration of the principle announced in United States v. Bigger, supra, United States v. Day, 2 USCMA 416, 9 CMR 46, and United States v. Sechler, 3 USCMA 363, 12 CMR 119, is helpful. In those cases we held that instructions on murder, with premeditation and unpremeditation delineated by the law officer, gave the court-martial the essential elements of both offenses. That was the precise situation present in the *Baguex* case. He was charged with premeditated murder and adequate instructions were given defining that offense. In addition, the law officer informed the court that unpremeditated murder was an included offense. He thereby identified all the elements of murder, both premeditated and unpremeditated, and highlighted the only difference between the two gradations of that offense. An instruction which itemizes the elements of murder, isolates premeditation, and then includes a statement that unpremeditated murder is a lesser included offense of premeditated murder, gives a court-martial adequate guides for both gradations of the crime. The court-martial returned a verdict of unpremeditated murder, thereby indicating clearly that it had found, beyond a reasonable doubt, that every element of the crime of murder as defined by the law officer had been established. However, there was another infirmity in the instructions. Voluntary manslaughter was reasonably raised as an issue by the evidence and the court-martial was left without any instructions on that particular offense. We were, therefore, confronted with disposing of a case in which the court-martial had found the accused guilty of a greater offense according to the standards set by the law officer, but no guidepost had been given to mark out the limits of the included offense. We could not affirm the finding of murder because there remained the question

as to whether the court-martial might not have found the lesser crime had it been defined. We could only speculate as to what verdict might have been returned had the members of the court-martial been fully and adequately advised of the elements of all offenses. We could, of course, ascertain that they would not have returned a verdict of not guilty as they had found present all elements of murder. Acting under the powers granted to us under Article 59(b), Uniform Code of Military Justice, and in order to purge the error, we affirmed only the lesser included offense. That we were taking curative action to remove the effects of the error is apparent from the following language:

"It has been urged that we purge the instructional error in the present case by affirming the conviction in so far as it involves guilty of the lowest of the lesser offenses raised by the evidence adduced below. The doubts we had entertained concerning our power to follow this course were resolved in its favor in United States v. Hunter (No. 359), 2 USCMA 37, 6 CMR 37, decided October 17, 1952. See also House Report No. 491 on H. R. 4080, 81st Cong., 1st Sess., at page 29. We do not doubt that the error presented by a failure to instruct as to lesser included offenses may be expunged by an appellate body's affirmance of the lowest of the lesser offenses fairly raised by the evidence, since the accused would thereby have the benefit of the most he could expect from proper instructions."

VI

The next principle involves our holding in United States v. Clark, supra; United States v. Moreash, 1 USCMA 616, 5 CMR 44; United States v. Fox, 2 USCMA 465, 9 CMR 95; United States v. Burden, 2 USCMA 547, 10 CMR 45; and United States v. Burgess, 2 USCMA 542, 10 CMR 40; but the rationale is first announced in *Clay*. It can be contended that in *Clark* and *Moreash* we could not reduce and affirm because there were no lesser included offenses, but such was not so in *Fox*,

*Burden,* and *Burgess.* But assuming the two former cases were precisely the same as the latter group in that regard, the important principle to me which militated against our affirming any finding was that the court-martial, in the initial consideration of the facts, operated without limitations, and made no findings on the elements of any offense defined by the law officer. When considering a record where the triers of fact write their own specifications, an appellate court cannot determine with any degree of accuracy what elements the court-martial seized upon to support its finding.

The earliest case stating our reasons for not affirming findings unconfined by instructions was United States v. Clay, supra. I again quote from that case:

". . . It is reasonable to require that members trying an accused should not be permitted to deliberate upon the guilt of an accused without having been told the nature of the crime and the essential elements of the offense. It is necessary and desirable that the law be explained to them, that the law officer or president point out the issues involved, and that someone with authority and knowledge of the law bring into focus the relationship of the evidence to those issues. Unless the court is in some way limited as to what are the essential elements, the members become unguided and unconfined. What evidence might be considered by them as relevant to establish the crime may be outside the limits of the charge and the material evidence influencing them might have no reasonable relationship to the elements of the offense."

United States v. Clark, supra, first applied the principle to included offenses. There the accused was charged with voluntary manslaughter and the law officer instructed the court-martial on the elements of that offense. The court, however, by exception and substitution returned a finding of guilty of negligent homicide upon which no instruction had been given. The board of review affirmed the findings and sentence, thereby placing its stamp of approval on the proceeding. In spite of a dissent by the Chief Judge who reasoned there was no prejudice, a majority of the Court reversed the finding and in the opinion stated:

"Here we do not have erroneous instructions, we have no instructions on the offense of which the accused was convicted. However, the reasoning of that case is applicable in this instance. We can not and do not know what the members of the court-martial would have found had they been confined by appropriate instructions. While the finding involved a relatively simple offense there is no discussion in the Manual as to the elements of the offense, or the proof necessary to establish it, and we reject the Government's contention that military personnel are trained in the law and that the name of the crime informs them of the elements. If this concept were adopted it would eliminate instructions in every case. Moreover, had an instruction been given in the presence of the accused and his counsel it would have afforded them an opportunity to know the limits imposed upon the court in determining the offense, and to narrow them if too broadly stated. There was no allegation in the charge as to any specific act of negligence and the finding returned is general in nature. Viewed from this level, the members of the court were permitted to operate in an open field and to make a finding without disclosing its foundation. Having such latitude, and without a contrary showing in the record, there is a reasonable possibility that they may have considered negligence as being something different from or less than what an appropriate instruction would have required. Such being the case, there is a reasonable showing that the substantial rights of the petitioner were prejudiced."

In United States v. Fox, supra, the accused was tried for unpremeditated murder and the court-martial was instructed on the elements of that offense. However, they found him not guilty of the offense charged but guilty of in-

**533**

voluntary manslaughter upon which no instructions had been given. We again refused to affirm because the accused was denied a substantial right available to him in the trial forum even though two reviewing agencies had found no material prejudice. One reason for the reversal may be gleaned from the following language:

"To uphold the Government's contention we would be required to hold that it is not necessary to instruct if the court-martial announces the reasons for its findings and they substantially fit the discussion or the proof contained in the Manual. The difficulty with this argument is that it overlooks the accused as a participant during the trial phases. He is entitled to know generally the limits of the field in which the court-martial is to operate when deliberating. He has the right to resist the giving of improper instructions and to submit instructions which will confine the court-martial to the evidence provided and the theories pursued. He is entitled to submit instructions on his theory of defense, for clarification or for purposes of refinement. But he cannot intelligently submit requests or except to instructions if the court-martial can write its own law after it has retired."

In United States v. Moreash, supra, the accused was charged and tried for involuntary manslaughter. Although no instructions on the elements of negligent homicide were given, the Court returned a verdict of guilty of that offense. This was a repeat of the situation found in United States v. Clark, supra, with the Chief Judge again dissenting, and the Court affirmed that rule by stating:

"It is argued here, however, in line with the dissent in Clark, that since the accused Moreash was actually found guilty of the lesser included homicide, as to which no instruction was given, he could not possibly have been harmed by the law officer's omission. Our answer to this is that, had the court been fully and properly instructed, its members might well have returned findings of not guilty—that

**534**

is, they might have deemed the homicide in question to have been a purely accidental killing. It is interesting to observe in this connection that the files of the Judge Advocate General's Office, United States Army, reflect that on rehearing under complete instructions, following reversal by this Court, the accused in United States v. Clark, supra, was found not guilty."

## VII

The final rule, that we do not reverse when the evidence raises only a greater offense, and the court-martial returns a finding of guilty of an included offense, is supported by two cases. In United States v. Bartholomew, 1 USCMA 307, 3 CMR 41, the accused was charged with premeditated murder but was convicted of voluntary manslaughter. There was no evidence which reasonably placed that offense in issue and there was no error in the law officer not defining that crime. Defense counsel contended the finding could not stand. That contention was answered by us in the following language:

"It is not necessary, however, that we pass finally on this question. Even if the court-martial in the present case was not justified in finding petitioner guilty of voluntary manslaughter, it did so in fact—and we fail to see how such error could possibly have harmed the accused. The evidence clearly establishes murder. Most jurisdictions of the United States have held that if the evidence warrants conviction in a higher degree of homicide than that found, the appellant may not complain even though the lower degree in fact found is not supported by the evidence. . . .

". . . A court acting reasonably would have been wholly justified in inferring malice—if not premeditation—from this cold-blooded act of homicide. This being so, and conceding the commission of error in permitting the finding of voluntary manslaughter to stand, we fail to see how this can have harmed petitioner in any way."

The decision of United States v. Ginn, 1 USCMA 453, 4 CMR 45, unequivocally

supports this rule. In that case the accused was tried for an unpremeditated murder but the court-martial, by exceptions and substitutions, found him guilty of voluntary manslaughter. No instructions were given on that offense and defending counsel asserted the rule laid down by us in Clark, supra, was controlling. The following language disposed of that assertion:

"The second issue concerns the failure of the law officer to instruct the court on the elements of voluntary manslaughter, the offense of which the accused was found guilty. It is urged that the decision of this Court in United States v. Clark (No. 190), 1 USCMA 201, 2 CMR 107, supra, makes this failure to instruct prejudicial error. We think the Clark case, supra, may be distinguished. It was there noted that the decision as to the scope of instructions must be made by the law officer prior to the findings. He must weigh the evidence and need instruct only on those lesser offenses which the evidence tends to prove. Necessarily implied, if not directly stated, in that opinion was a finding that the evidence required an instruction on negligent homicide—the offense of which the accused was found guilty. Here, we find no necessity, under the evidence, for an instruction on voluntary manslaughter. Ordinarily, that crime contemplates a killing in the heat of passion, with adequate provocation. The evidence outlined in connection with our discussion on self-defense shows that the accused did not kill in a provoked and sudden affray. Considerable time had elapsed since the original provocation. No threats were uttered just prior to the killing —instead, an effort at apology was made. The accused left the scene and returned, armed, to threaten the deceased. These circumstances are inconsistent with a loss of will and malice brought on by sudden and adequate provocation. Even defense counsel concedes that 'there is not one scintilla of evidence in the record to show that the killing occurred "in the heat of passion." ' Accordingly, petitioner was not prejudiced by the failure to instruct on voluntary manslaughter."

## VIII

With those rules in mind, I pass on to show how they, and the concepts announced in the cited cases, will be brushed aside by this decision. I first should explain that I believe this case is controlled by our holding in United States v. Clark, supra; United States v. Moreash, supra; and United States v. Fox, supra; and that it should be catalogued with them.

For the purposes of this argument, I shall accept the statements made in the opinion to the effect the evidence was sufficient to make an issue of the principal and included offenses and that the law officer erred when he failed to instruct on included offenses. Assuming that as a factual and procedural background, I fail to see how this case can be differentiated from those which follow the *Clark* rule. The court-martial did not return a finding on any offense which was defined by the law officer. Accordingly, I submit there is no way in which we can ascertain, except by speculation, what elements the members considered in fixing guilt. They wrote their own specifications for the crime and we have iterated, and reiterated, in an untold number of cases, that the law officer is the only source from which a court-martial can obtain its definitions of offenses. Under today's rule, what has become of that concept and others like the following: That we are unable to ascertain what the members of the court-martial would have found had they been properly instructed; that if no affirmative instructions appear in the record we are handicapped in ascertaining the legal standards applied by the court; that the duty falls on the court to first determine whether the evidence proves the elements beyond a reasonable doubt; that an accused is entitled to know the limits by which the court-martial measures his conduct; and, that had the court-martial known the true elements of the offenses in issue it might have found the accused not guilty? I suppose we shall continue to announce them but emasculate their effect by affirming a

535

finding without proper elemental support. If we are to follow that procedure then I believe we have labored long and arduously to lay down a body of unimportant law. If we can affirm the finding made by the court-martial on an uninstructed offense, why all the reversals in cases where instructions have not been given? If guideposts need not be established in the included offense field then there is no need of announcing standards on the principal offenses. Under the new concept we can take care of those minor details and this is the manner of accomplishment. All we need do is determine that the court-martial returned a verdict of the lowest offense which we believe is raised reasonably by the evidence. If there is only one gradation of the offense then it has no choice but to return a verdict of the greatest which, of course, happens also to be the lowest. Having done that, the findings, whether we call it the greater or the lesser, can be affirmed by us. Ergo, while the law officer erred prejudicially in not giving instructions on the offense, we cure that prejudice by perpetuating it. Of necessity, if that reason can justify us in affirming a finding it can also justify a convening authority and a board of review in doing likewise. When I consider that we have announced a rule permitting each reviewing authority to affirm a finding of guilt, not supported by an instructional framework, I see retrogression. Surely, if there is an error in a trial which requires an appellate body to take some action to cure it, the accused has been prejudiced. The prejudice is purged by the action taken only if it can be corrected by a reduction in the offense or by a rehearing, and I must confess my inability to see how it can be purged by perpetuation.

I now revert back to my early statement that unless we find in the Uniform Code of Military Justice a grant of power to correct prejudicial error, without granting a rehearing, we should be limited to the same authority possessed by civilian courts. Article 59 of the Uniform Code of Military Justice provides:

. : "(a) A finding or sentence of a court-martial shall not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial right of the accused.

"(b) Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm so much of the finding as includes a lesser included offense."

That section grants us a certain amount of discretion not to affirm the offense found but only an included offense. I believe a review of the Court's decisions will establish that I have repeatedly used subsection (a) as a command in my disposition of cases. I have not, however, gone so far as to find that an accused who has been materially prejudiced by an error could be denied relief because of subsection (b). I have no doubt that both subsections should be given force and effect and that if there are any inconsistencies they should be reconciled. I, however, do not find them out of harmony. They are independent and both furnish an important safeguard to military justice—the first subparagraph for the Government and the second for the accused. Subsection (a) commands that we not reverse a case unless (1) we find an error in the record, and (2) that the error has prejudiced materially the substantial rights of the accused. I suppose everyone will concede that failure to instruct on offenses in issue is error and so the dispute centers around prejudice. I know not how many of our decided cases have supported the rule that failure to instruct on an offense reasonably raised by the evidence is prejudicial, but there are many. Apparently we have now uncovered a new principle that permits us to find no prejudice. The principle swings out of the concept that we can fix the offenses which are raised reasonably by the evidence and if the court-martial returns a finding on the one we select as the lowest, then the accused has not been denied a substantial right. The hiatus in that reasoning is posed by the following questions: Has the accused lost his right to have the court-martial first find on the elements of the offense of which he is convicted? By what mental process do we conclude the

court-martial used the measuring rod subsequently prescribed by us? More than that, if our formula had been given to the triers of fact, how do we know they would have found beyond a reasonable doubt that every element was present? Is not an accused prejudiced if his conviction in the trial forum can be determined without him, his counsel, or the court-martial being informed as to the standards by which his guilt is being measured? Is he not prejudiced if reviewing authorities are unable to ascertain the limits within which the court-martial operated? I thought we had concluded so in a great number of cases. Lastly, is not the accused entitled to have the court-martial know the specifications of the lowest offense reasonably raised by the evidence so as to permit it to ascertain whether the facts are insufficient to establish that offense? In the final analysis if they do not, the accused is entitled to a finding of not guilty; and that that offense be fitted to an appropriate formula by the court-martial is just as important, if not more so, as that other offenses be measured by it.

The cases I have quoted from have set forth the manner in which I believe Article 59(b), Uniform Code of Military Justice, should be used. It should be kept in mind that the power granted is discretionary and need not be exercised by us as there are instances when an affirmance of a lesser included offense will not satisfy the ends of justice. In those instances a rehearing should be granted. On the other hand, retrials of criminal cases are expensive, time-consuming, and they clog the wheels of the military judicial machinery. If we can bring litigation to a satisfactory conclusion (when prejudice can be purged by reducing the findings to an included offense) by affirming the lowest included offense raised reasonably by the evidence, every good reason argues for exercising the powers granted us. As our decisions to date have disclosed, if the court-martial has found the elements of the greater offense present, the chances are great that the findings will cover the elements of the lesser offense. Granted that if the findings were to stand, prejudice would continue, when the offense is reduced any probability of injury is eliminated. That does not follow if the findings as made by the court-martial are affirmed.

It can be argued with some degree of persuasion that Article 59 of the Code ought to be used to dispose of cases similar to *Clark*. I would prefer not to go that far, but, if we are to reach ultimately that stage, subsection (b) of the Article must be applied. That is, we should affirm only a lesser included offense; if no crime is sandwiched in between the findings as rendered by the court-martial and a finding of not guilty, then a rehearing should be ordered. Even at the sake of being repetitious, I suggest that prejudice occurs in instructional failure when the court-martial has not been furnished a proper template of the law to measure accurately the facts it hears. The only way I know to purge that error is to scale down the offense to fit the mold used by the court-martial. If, however, it is uninformed as to the size, shape, and proportions of the mold, we cannot imagine one and then say we are satisfied the court-martial would have found the evidence conformed to the one we conceived. In the words of my associates in previous cases "It is not for us to determine what the court members would have found had they been properly advised on the elements."

As to the instant case, I would apply what I believe has been the law, and reverse. What elements the court-martial used as a predicate for the finding do not appear. Many a defendant has been found guilty of involuntary manslaughter, or not guilty, for killing under circumstances less provocative than those claimed by the accused. Had the court-martial been informed that an intent to kill or do great bodily harm must be established beyond a reasonable doubt before it could convict of voluntary manslaughter, a different verdict might have resulted. At least, it had rejected both as elements of second degree murder. Be that as it may, it hardly comports with my idea of a fair trial that when lesser included offenses

**537**

are raised reasonably by the evidence, the accused can be convicted by a court-martial measuring his conduct by unknown standards.