UNITED STATES, Appellant

v.

HARRY J. FERRY, Second Lieutenant, U. S. Army, Appellee

2 USCMA 326, 8 CMR 126

No. 1438

Decided March 20, 1953

CAPT. Irvin M. Kent, U. S. Army, for Appellant.

LT. COL. James C. Hamilton, U. S. Army, and 1ST LT. James A. Hagan, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused stands convicted by general court-martial of absence without leave and larceny, in violation of Articles 86 and 121 of the Uniform Code of Military Justice, 50 U. S. C. §§ 680 and 715, and is sentenced to dismissal, total forfeiture of pay, and confinement for six months. An Army board of review ordered a rehearing based on our decision in United States v. Wilmer Keith (No. 503), 4 CMR 85, decided July 30, 1952.

The Judge Advocate General has certified to this Court the correctness of the board of review's decision concerning the out-of-court conference between the law officer and the court.

The record of trial reveals that after the court had reached its findings, and

after hearing evidence in extenuation and mitigation, the court ▆▆▆▆▆ was again closed to deliberate on the sentence. During the deliberations, the law officer and the reporter were called into the closed session and the following colloquy ensued:

"PRESIDENT: We haven't run into what we can give in this case. We understand a dishonorable discharge and five years, but we are looking for something on the subject of dismissal.

LAW OFFICER: Well, dismissal is the term used in officer cases rather than dishonorable discharge.

PRESIDENT: Does that mean that he can get back in as an enlisted man if he is dismissed?

LAW OFFICER: I believe it is equivalent to a dishonorable discharge but the term used in officer cases is dismissal.

COURT MEMBER: I have seen some officers who made or were given a discharge 'without honor'. I think that can be done by an army commander—a plain discharge without honor. Is that the same thing?

LAW OFFICER: I am not aware of that. I can secure additional information if you so desire?

PRESIDENT: We would appreciate it. (R. 70–71)

At 1530 hours, 9 May 1952 the reporter and law officer withdrew from the courtroom. At 1535 hours, 9 May 1952, the court was reopened.

PRESIDENT: The court will come to order.

TRIAL COUNSEL: All parties to the trial who were present when the court closed are again present.

LAW OFFICER: Let the record show that while the court was closed the law officer and reporter were summoned and the following transpired. I will ask the reporter to read what transpired in the presence of the court, law officer, and reporter.

The reporter then read the proceedings during the closed session attended by the court members, law

officer and reporter. (See pages 70 and 71)

LAW OFFICER: The purpose of making these remarks in open court is as follows: the questions proposed to the law officer dealt with matters beyond the scope of the law officer, who may, in closed session do nothing other than certify as to the correctness of the findings and sentence, and the court was opened at this time because it was felt the information which transpired should have been presented in open court. In answer to the courts question, if any dismissal is wished, the sentence will be 'dismissed', and that is the only form of punitive discharge that is authorized at this point. Now, are there any further questions on that point?

PRESIDENT: No further questions by the court.

LAW OFFICER: Does the court—does the defense feel that the record insofar as this particular incident is concerned is now such that the rights of the accused are fully protected?

DEFENSE COUNSEL: We believe so, sir."

In our opinion it is unnecessary to consider whether the participation by the law officer in the deliberations of the court reached the level condemned in United States v. Wilmer Keith, supra. Here, the law officer realized that the action taken was improper and cured the procedural deviation by repeating the court's question and answering it in open court. Under these circumstances, we think that whatever error occurred was cured by the subsequent action of the law officer. It is noteworthy that defense counsel stated that he believed that the rights of the accused were fully protected.

We note that there is also present in this case a question concerning the adequacy of the law officer's instructions. We ▆▆▆▆▆ cer's instructions. We agree with the board of review that there was here sufficient proof of intoxication to require the law officer to make clear in his instructions the effect of this proof on the element of specific intent required for the of-

fense of larceny. United States v. Drew (No. 422), 4 CMR 63, decided July 23, 1952; United States v. Wray (No. 1307), 6 CMR 26, decided October 10, 1952.

The decision of the board of review is reversed in part and the case is remanded to The Judge Advocate General of the Army for referral to the board of review for further consideration in the light of this opinion.

Judge BROSMAN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result for the reasons set forth in United States v. Woods and Duffer (No. 1023), 8 CMR 3, decided February 19, 1953.