UNITED STATES, Appellant and Cross-Appellee

v.

JOHN HENRY, Private E–1, U. S. Army, Appellee and Cross-Appellant

4 USCMA 158, 15 CMR 158

No. 3187

Decided April 9, 1954

LT COL William R. Ward, U. S. Army, and MAJ Irvin M. Kent, U. S. Army, for Appellant and Cross-Appellee.

LT COL Herman P. Goebel, Jr., U. S. Army, and 1ST LT Ivan E. Barris, U. S. Army, for Appellee and Cross-Appellant.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial, convened in Korea, convicted the accused of several violations of the Uniform Code of Military Justice, including one of impersonating a noncommissioned officer. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for ten years. The convening authority approved all of the findings of guilty and the sentence. However, because of what it conceived to be reversible error, a board of review set aside the findings of guilty on the impersonation charge. The board also modified the sentence by reducing the period of confinement to five years. The Acting The Judge Advocate General of the Army certified to this Court the following questions:

"(1) Was the admission without objection 'of the extra-judicial exculpatory statement of the accused a violation of his rights under the provisions of Article 31, Uniform Code of Military Justice?

"(2) Under the circumstances, did the subsequent showing that such extrajudicial exculpatory statement had been made without prior warning under Article 31, Uniform Code of Military Justice, require the law officer on his own motion without objection or suggestion from the defense to instruct the members of the court-martial not to consider the statement?"

Master Sergeant Rodgers, the First Sergeant of the 107th Transportation Truck Company in Korea, observed the accused in and around the company area for about a week before accused was taken into custody. The accused was not a member of Sergeant Rodger's company. During the period that he was observed, the accused was dressed in a fatigue uniform; on his cap was a metal insignia indicating the rank of a Sergeant First Class. On February 18, 1953, the accused was taken into custody by Sergeant Minnach, who had been directed to pick up the accused. He found the accused in the orderly room of the transportation company. At that time, the accused was dressed in fatigues and he was holding in his hand a cap which bore the aforementioned metal insignia. Also present in the orderly room were Sergeant Rodgers and the company commander.

At the trial, when the trial and defense counsel had completed their questioning of Sergeant Minnach, the law officer examined the witness as follows:

"LO: Sergeant, did you have a conversation with the accused on or about 18 February 1953?

WITNESS: I did, sir.

LO: Did the accused tell you that he was a Sergeant First Class?

WITNESS: I asked him if he was, he hesitated for a moment, and then he said no, he was not."

Defense counsel made no objection to the admission of this testimony. After some further questions, trial counsel asked that the witness be excused permanently. The law officer inquired whether anyone desired to recall the witness. The defense counsel thereupon stated that he had "a question before he is excused permanently." The question asked and the answer given are as follows:

"QUESTIONS BY THE DEFENSE COUNSEL:

Q. Sergeant, did anyone ever advise the accused of his rights before carrying on this interrogation by you, the commanding officer, and the first sergeant?

A. Well, sir, I didn't advise him of his rights. I understand that only when there is a written statement, he has to be advised of his rights.

DC: I have nothing further."

Defense counsel did not move to strike Sergeant Minnach's previous testimony, nor did he in any way indicate that he wanted to have that testimony withdrawn from the court's consideration.

The decision in this case must follow our holding in United States v. Fisher, 4 USCMA 152, 15 CMR 152. We there held that, in the absence of special circumstances, a failure to object at the trial to the admission in evidence of a pretrial statement obtained from an accused without the warning required under Article 31, 50 USC § 602, precludes the accused from raising the error for the first time on appeal. No unusual circumstances are present in this case. Consequently, the error need not be considered by an appellate tribunal.

Since this determination adequately disposes of the issue, we need not decide whether the certified questions properly describe the accused's statement as exculpatory. Neither need we consider whether Article 31 may properly be applied to a purely exculpatory statement.

For the foregoing reasons, the decision of the board of review is reversed. The case is returned to The Judge Advocate General for resubmission to a board of review for action not inconsistent with this opinion.

LATIMER, Judge (concurring in the result):

I concur in the result.

What I say in my concurring opinion in United States v. Fisher, 4 USCMA 152, 15 CMR 152, explains my views.

BROSMAN, Judge (concurring in the result):

It is easy for me to concur in the result reached by the majority here—although I cannot under any circumstances accept the broad ground on which it is based. To me, the unfortunate ratio of this case constitutes judicial legislation of the most overt sort,

and flies in the face of law which is binding on this Court. See my separate opinion in United States v. Fisher, 4 USCMA 152, 15 CMR 152.

II

It is distinctly possible that the instant case may fall within the principle of United States v. Josey, 3 USCMA 767, 14 CMR 185, since my reading of the record reveals that it is not shown clearly that the investigators failed to advise the accused of his rights under Article 31, before he made the statement the reception of which in evidence is now the subject of complaint. However, I prefer to bottom my concurrence on the applicability of the doctrine of waiver—within the historic and precise meaning of that doctrine, that is, the one contemplated by military law. This waiver derives from the conscious choice of defense counsel at the trial level to permit the court-martial to hear the evidence now questioned before us.

III

To put the matter in perspective, I must emphasize that the defense position at the trial was that the accused had *not* impersonated a noncommissioned officer. The reasonableness of such a position is demonstrated by the circumstance that the record of trial comes perilously close to being insufficient legally to support the findings of impersonation. The only circumstance tending to establish guilt was that the accused had at various times been seen wearing on his cap a minute metal insigne indicating the grade of sergeant first class. However —as was brought out by the defense through cross-examination of prosecution witnesses—this pin constituted no part of the insignia of rank specifically authorized for noncommissioned officers by regulations. Moreover—as defense counsel also elicited—the accused had not been seen wearing sergeant's chevrons on his uniform; had not frequented localities reserved for noncommissioned officers; and had not asserted to anyone that he was a sergeant. The fact that —when asked if he was a sergeant—he had replied in the negative fitted neatly into the defense's theory of the case. Indeed, this information was drawn

from a prosecution witness, not by the trial counsel, but by the law officer. It is to be noted that trial counsel appears to have realized at once that this testimony had further undercut a weak case—for immediately thereafter he brought out that the accused's statement to the effect that he was a private was not made until after he had faced the suspicion of his interrogators. The obvious inference proposed was that at prior times—and when not confronted with precipitate detection—the latter *may* have made statements indicating that he was a sergeant first class.

It is hard to see how the accused's statement incriminated him in any way —for, in light of other prosecution evidence, there was no basis whatever for doubt that he was a private rather than a sergeant first class. Since the information obtained without Article 31 warning—if in fact no such caution was given—could scarcely have injured the accused, and might have served to aid him, it is understandable that defense counsel did not object thereto or move to strike the testimony and secure a direction that it be disregarded by court members.

Defense counsel revealed clearly that he was aware of the possible benefits of Article 31 to his client. Indeed it was he who inquired whether the accused had been advised of his rights thereunder—to which the witness replied merely that he, himself, had not so advised the accused. Later in the trial—and when the Government sought to present a further remark of the accused, one made at approximately the same time—defense counsel interposed an objection on the ground of noncompliance with warning requirements. At this time the prospective testimony was excluded. It is obvious from the record that defense counsel feared that this additional remark might suggest to the court the impersonation of a noncommissioned officer by the appellant.

In light of the record's contents, I am entirely satisfied to say that counsel for defendant at the trial was not guilty of an inadvertent failure to object to damaging evidence. Instead, I am safe in concluding that he made a willing and knowing choice in favor of permitting the account of Henry's statement to go before the court-martial. In other words, he waived—and in *my* language. It is certainly not within my province to question the trial tactics of defense counsel.