UNITED STATES, Appellee

v.

DONALD CHARLES BEER, Seaman Apprentice, U. S. Navy, Appellant

6 USCMA 180, 19 CMR 306

*Commander James A. Brough* was on the brief for Appellant, Accused.
*Commander George H. Rood* was on the brief for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

In this instance the accused was found guilty of two offenses of absence without leave, disobedience of a lawful order and desertion, in violation of Articles 86, 92 and 85, 50 USC §§ 680, 686, and 679, respectively. He was sentenced to a dishonorable discharge, confinement at hard labor for one year, forfeitures of all pay and allowances for the same period of time, and reduction in rank to seaman recruit. Reviewing authorities have affirmed the findings and sentence and we granted an open review. Appellate defense counsel asserts only one assignment of error and our search of the record indicates that it is the only one of merit. The question raised is whether, under the rule announced in United States v. Moore, 4 USCMA 675, 16 CMR 249, the failure on the part of the court-martial to excuse a member who became a witness for the prosecution was error.

The facts concerning the substantive offenses are of no importance to the question to be decided, and so we relate only those touching on the issue we consider. During the prearraignment proceedings, the law officer recognized the possibility that one member of the court might be disqualified because he had certified certain official documents. He thereupon, in a conference with counsel and the accused, informed the defense that the member might be disqualified if certain records were introduced in evidence. He particularly directed defense counsel's attention to his right to object to or challenge the member as being ineligible, and the following exchange of statements took place:

"DEFENSE COUNSEL: The defense knows well that Lieutenant Confer signs so many of the service record entries that in all probability the particular facts have now escaped his memory and the defense feels that will not effect his determination for that reason because of that. The defense does not feel that his qualifications are impaired in any way.

"LAW OFFICER: The defense at this time is then waving a possible challenge for cause or until and unless it appears that there is a more substantial basis for challenge?

"DEFENSE COUNSEL: Yes sir."

Defense counsel did not assert any challenge for cause, exercised his peremptory challenge to excuse another member, and thereafter made no objection to the officer continuing as a member of the court.

In United States v. Moore, supra, we held that the findings and sentence must be set aside where an ineligible member —one who served as a witness for the prosecution—was permitted to participate in the deliberations on the findings and sentence. However, we specifically made certain reservations which were offered as guideposts to point the direction we might travel if, and when, this particular question was squarely presented. In that case we stated:

"Apparently all members of the court-martial at the trial level were unaware of the ineligibility. Trial counsel usually has knowledge of prospective witnesses prior to trial, and generally an announcement is made to the effect that no member of the court-martial will be called as a witness by the prosecution. That

representation was made in the present instance but it turned out to be violated. In addition, trial counsel read the document, including the name of the authenticating officer, and no action was taken with respect to the disqualification. Because of those facts, and because this was a special court-martial trial and accused was represented by a non-lawyer, we do not consider the doctrine of waiver applicable."

This case presents us with that problem and offers us a vehicle by which we may express our views on whether the ineligibility of a witness-member can be waived. In that connection we specifically direct attention to the fact that in this instance, if the waiver was not effective, the membership of the court was reduced below the level of five competent members, and the court decided the issues and imposed a sentence with a smaller number of competent members present than prescribed by the Code.

Article 25 (d) (2), 50 USC § 589, in so far as it is of importance to this decision, provides as follows:

". . . No person shall be eligible to sit as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case."

It is to be noted that merely becoming a witness in a case does not disqualify a member—it is ▮ only so when he becomes a witness for the prosecution. From that, we reason that the underlying concept for the ineligibility is: a witness is ordinarily favorable to the side for which he testifies, and an accused should not be judged by a partial member. The Manual for Courts-Martial, United States, 1951, paragraph 63, page 94, sounds in that theory for it states:

"WITNESS FOR THE PROSECUTION. —If at any stage of the proceedings the law officer or any member of the court is called as a witness by the prosecution, he shall, before qualifying as a witness, be excused from fur-

ther duty as law officer or member, respectively, in the case. Whether the law officer or a member called as a witness for the court is to be considered as a witness for the prosecution depends on the character of his testimony. In case of doubt he will be excused as law officer or member, respectively. If a witness called by the defense testifies adversely to the defense, he does not thereby become a 'witness for the prosecution.' "

True, the Manual makes the challenge self-operating, but it contemplates that some objection or ▮ question can be raised, as in paragraph 62h(2), page 93, it provides as follows:

"Inquiry.—If a member or law officer is challenged for any of the first eight grounds enumerated in 62f, and he admits the fact upon which the challenge is based, or if in any case it is manifest that a challenge will be unanimously sustained, the member or law officer will be excused forthwith unless objection or question is made or raised; otherwise the challenge, if not withdrawn, must be passed on by the court after both sides have been given an opportunity to introduce evidence and to make an argument."

If we construe that language correctly, an accused could resist a self-operating challenge if he preferred to have the member remain on the court even though the ineligibility was admitted. Whether the law officer should leave the member on the court-martial is another matter, dependent on the nature of the disqualification, but clearly the Manual gives the accused a right of some choice.

In interpreting 62f of the Manual, which deals with challenges for cause, we have held that the first eight enumerated grounds for challenge seem to have been considered of great importance, and the remaining five are a group of a lesser concern. Regardless of the reason for a challenge, we have never gone so far as to hold that it may not be the subject of waiver, provided it is clearly and unmistakably ˊcast

aside with full knowledge of the privilege to excuse the member. On the contrary, much of what we have said in previous opinions indicates our belief that such a right could be waived. In United States v. Bound, 1 USCMA 224, 2 CMR 130, a member of a special court-martial which tried the accused had conducted an informal investigation of the facts surrounding the offense. We held he was disqualified to serve as a member of the court-martial, but we made the following pertinent observation:

". . . However this may be, we are assured that the mere failure of defense counsel to act in this case— and quite probably any failure to act on the basis of a ground included within the critical group—may not serve as the basis for a successful claim of waiver. It is suggested, however, that here the conduct of defense counsel extended beyond a mere failure to act and constituted an affirmative declination to challenge amounting to consent. We are not impressed by this argument. Under the usual and proper court-martial procedure a mere failure to challenge within the argument's meaning will never be found, for in every instance defense counsel will be asked of his wish to challenge for cause and to challenge peremptorily. See Manual for Courts-Martial, United States, 1951, Appendix 8a, page 507. We therefore explicitly reject the interpretation urged above. In our opinion, in short, defense counsel's conduct in this case must be dealt with as a mere failure to challenge. It does not necessarily follow from what we have said that it might not have been possible legally for the accused, Bound, to have consented expressly to Lieutenant May's participation in the case. We find no necessity for a holding on this point. In our opinion he simply did not do so."

In United States v. Glaze, 3 USCMA 168, 11 CMR 168, a majority of the Court quoted with approval certain language found in 31 Am Jur, Jury, § 119. We there stated:

"Another good reason why accused's first contention must be overruled is that he waived his right to challenge the member. The orders appointing Colonel Bishop were issued on May 24, 1952. They disclosed that he was a member of the Judge Advocate General's Corps. He was the only officer mentioned in the order and a cursory glance would show his branch of the service. Counsel for accused was afforded an opportunity to question the officer on his qualifications and when he was asked concerning his desire to exercise a challenge he waived those available for cause and the one available peremptorily. For the purpose of announcing a rule on waiver, we adopt the general rule announced in civilian cases. It is well expressed in the following language found in 31 American Jurisprudence, Jury, section 119:

'The general rule is that objection to a juror because of his disqualification is waived by failure to object to such juror until after verdict, whether in a civil or a criminal case, and even with respect to a statutory qualification. Even in a capital case the disqualification of a juror is generally unavailable after verdict. The general rule stated is of special force where it appears that the party complaining was aware of the objection to the juror at the time of the impaneling of the jury, or where such objection could have been discovered by the exercise of ordinary diligence, and it does not appear on the whole case that injustice resulted. . . .' "

In his concurring opinion, Judge Brosman did not join in that portion of the opinion which dealt with waiver, but he authored United States v. Bound, supra, and he concurred outright in United States v. Moore, supra.

We believe this case falls within the ambit of what may be considered corollary principles found in the previously cited cases. Here, the case was tried before a general court-martial, the accused was represented by a military

**183**

lawyer certified by The Judge Advocate General of the Navy, and, in addition, he had employed civilian individual counsel who was a member of the California State Bar. There was no representation by the law officer that all members of the court were qualified to sit, and it was specifically called to the attention of defending counsel that the member would be removed if the accused so desired. The colloquy which took place prior to trial shows beyond peradventure of doubt that there was an intelligent and conscious waiver of any right to question the member's eligibility to participate. The question, therefore, is whether this right has been made so substantial by the Code that it cannot knowingly be waived.

We have noticed in isolated decisions of boards of review that certain language used by us in United States v. Moore, supra, has been interpreted to mean there was no jurisdiction for that court-martial to try Moore. Obviously, that interpretation is erroneous for the reason that the disqualification did not become apparent until after the proceedings were well on their way. It should be clear from that fact alone that the court-martial had jurisdiction of the offense and the person of the accused. All we said, and all we intended to say, in that case was that when the court-martial continued to hear the cause after the ineligibility arose, subsequent proceedings were invalid, and findings could not be legally made and sentence legally imposed. In this instance, it might be said we come closer to touching a jurisdictional question, because the Manual in paragraph 8 has this to say with regard to that subject:

"The jurisdiction of a court-martial—its power to try and determine a case—and hence the validity of each of its judgments, is conditioned upon these indispensable requisites: That the court was appointed by an official empowered to appoint it; that the membership of the court was in accordance with the law with respect to number and competency to sit on the court; and that the court was invested by act of Congress with power to try the person and the offense charged."

However, we need not reach that question because accused's conscious waiver lifted the cloak of ineligibility from the fifth member and thereby qualified him for service.

We have respectable authority from the United States Supreme Court to support us in the position we take. Admittedly, the holding is in only an allied field, but in Patton v. United States, 281 US 276, 74 L ed 854, 50 S Ct 253, the Court grappled with a waiver of the right of a defendant to be tried by a jury of twelve members. In that instance, it was stipulated by the Government and counsel for the defendants that a trial should proceed with eleven jurors. Upon appeal, the United States Circuit Court of Appeals for the Eighth Circuit certified to the United States Supreme Court the question of whether the conviction was legal in view of the reduction of the jury from the required number. The Court developed historically the nature and importance of the constitutional right to trial by jury, and it quoted from the case of Thompson v. Utah, 170 US 343, 42 L ed 1061, 18 S Ct 620. The statement taken from the Thompson case throws light on our question of waiver. There it was stated:

"It is said that the accused did not object, until after verdict, to a trial jury composed of eight persons, and therefore he should not be heard to say that his trial by such a jury was in violation of his constitutional rights. It is sufficient to say that it was not in the power of one accused of felony, by consent expressly given or by his silence, to authorize a jury of only eight persons to pass upon the question of his guilt. The law in force, when this crime was committed, did not permit any tribunal to deprive him of his liberty, except one constituted of a court and a jury of twelve persons."

The Supreme Court considered the view expressed above but held it not authoritative, for the author Justice in Patton stated:

"But this statement, though posi-

tive in form, is not authoritative. The case involved the validity of a statute dispensing with the common-law jury of twelve and providing for trial by a jury of eight. There was no contention that the defendant, Thompson, had consented to the trial, but only that he had not objected until after verdict. The effect of an express consent on his part to a trial by a jury of eight was not involved —indeed he had been silent only under constraint of the statute—and what the court said in respect of that matter is, obviously, an obiter dictum."

The two quotations point up the difference we seek to make between the thought we expressed in United States v. Moore, supra, and the rule we herein announce. There we were confronted with a special court-martial where the accused was not represented by counsel and where there was no more than silent acquiescence. We have been loathe to enforce waivers in special court-martial cases and no express consent was involved. Here we are in a general court-martial arena with qualified attorneys, and it can hardly be contended that defense counsel acquiesced by silence.

We are here dealing with a valuable right even though this disqualification is statutory and not necessarily based on bias. Many witnesses testify to formal and official acts done by them when they have no real interest in the outcome of the litigation. On the other hand, some witnesses have a direct interest in the final result. Most counsel would remove a court member if he were considered unfriendly to an accused, and so this problem of waiver arises most often in cases where actual bias is absent. However, when qualified counsel take a calculated risk, they cannot be relieved of the consequences merely because the right may be fundamental. In United States v. Patton, supra, defendant's counsel approached the problem in that manner, and the Supreme Court rejected the argument in the following way:

"The view that power to waive a trial by jury in criminal cases should be denied on grounds of public policy must be rejected as unsound.

"It is not denied that a jury trial may be waived in the case of petty offenses, but the contention is that the rule is otherwise in the case of crimes of the magnitude of the one here under consideration. There are decisions to that effect, and also decisions to the contrary. The conflict is marked and direct. Schick v. United States, 195 U.S. 65, 70, 71, 49 L. ed. 99, 102, 103, 24 Sup. Ct. Rep. 826, 1 Ann. Cas. 585, is thought to favor the contention. There the prosecution was for a violation of the Oleomargarine Act [August 2, 1886] (24 Stat. at L. 209, chap. 840, U. S. C. title 26, § 571), punishable by fine only. By agreement in writing a jury was waived and the issue submitted to the court. Judgment was for the United States. This court held that the offense was a petty one, and sustained the waiver. It was said that the word 'crimes' in art. 3, § 2, of the Constitution, should be read in the light of the common law, and so read, it does not include petty offenses; and that neither the constitutional provisions nor any rule of public policy prevented the defendant from waiving a jury trial. The question whether the power of waiver extended to serious offenses was not directly involved, and is not concluded by that decision. Mr. Justice Harlan, in a dissenting opinion, after reviewing the authorities, concluded (p. 83) that 'the grounds upon which the decisions rest are, upon principle, applicable alike in cases of felonies and misdemeanors, although the consequences to the accused may be more evident as well as more serious in the former than in the latter cases.' "

While we do not recommend to law officers that they accept waivers of substantial rights which are granted by the Code, we do not propose to support a rule which would permit defending counsel to induce error and then seek to take advantage of it on appeal.

For the reasons indicated, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring):

Of course, Judge Latimer's solution of the present problem is the only sensible one—and he is unreservedly correct in suggesting that my reticence in the Glaze case constitutes no bar to outright concurrence here. There, I simply saw no reason for talking of waiver at all—for it was elsewhere made clear in the opinion that the accused possessed no shadow of right to exclude Colonel Bishop from membership in the court-martial.

Additionally, many of my views on the subject of waiver have been discarded recently—for the regrettable, but practical, reason that, despite repeated efforts, I was unable to convince my brothers of their soundness. See my separate opinions in United States v. Fisher, 4 USCMA 152, 15 CMR 152; and United States v. Henry, 4 USCMA 158, 15 CMR 158. It has been responsibly said that discretion is the better part of valor—and this is true as well, I suspect, of judicial effectiveness. In my view, too, courts-martial—including appointed defense counsel—have matured greatly during the past several years. Cf. my separate opinion in United States v. Smith, 2 USCMA 440, 9

CMR 70. Wholly apart from these orderly withdrawals, however, I would find no difficulty in supporting the majority's opinion without qualification—for, if I ever saw an express and informed waiver, I find it here.

As I understand the civilian law of the subject, there is—apart from statute—no flat rule disqualifying a juror from testifying as a witness. Indeed, no essential inconsistency seems to be recognized between appearance as a witness and service as a juror in the same case. The matter is entirely left up to the parties. See Wigmore, Evidence, 3d ed, §§ 1800, 1910. Here the accused—the only party who, by any stretch of the imagination, could have been harmed—indicated explicitly, and with full knowledge of the facts, that he had no objection to the court member concerned. That is enough for me. I am sure that in the Moore case we went as far as we should in requiring the excuse of court-martial members for what in most instances are purely technical and formal reasons.

True it is that the Manual—read with Moore—might seem to point in a direction other than the one in which Judge Latimer is traveling. However, these sources must forbid his course much more clearly than they do to cause me to part company with him.