UNITED STATES, Appellant

v

GERALD DAVID McBRIDE, Steward Apprentice, U. S. Navy, Appellee

6 USCMA 430, 20 CMR 146

No. 6372

Decided September 23, 1955

*Commander George P. Kurtz* argued the cause for Appellant, United States.

*Lieutenant W. O. Miller* argued the cause for Appellee, Accused.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

For reasons appearing in their separate opinions, a majority of the Court concludes that the rehearing in this instance should be limited to imposition of sentence. Accordingly, that will be the order. Therefore, the views expressed by the author Judge which are at variance with those expressed by the majority become gratuitous. However, because of the nature of the separate opinions, the reasons why the author Judge does not join in the disposition deserve explanation.

I believe the law was settled by us in the case of United States v Moore, 4 USCMA 675, 16 CMR 249, and that we should not retreat from that position. True it is that we are in an area where a codal provision requires us to take a position recognized to be technical, but that we cannot escape. Once having occupied the field, we should follow the Code, regardless of technicalities, or reverse our previous holding and state clearly that we do not believe Congress intended to encompass a situation where a court member becomes a witness only because of an official duty to prepare or certify records.

So that I may state clearly my position on waiver, I make the following observations. In general court-martial cases, I have sought to adopt the Federal civilian rule regarding waiver, and I have hopes that we will eventually do so in toto. In the meantime, I have no hesitancy in invoking the principle of waiver, but it should be applied uniformly. In this instance, I fail to understand how that doctrine can be rejected in Moore, supra, and invoked here. My associates base their con-

**432**

clusion on a plea of guilty. In that connection, I merely point out that at the time the plea was entered, the member was not disqualified. If, therefore, there was a waiver, it must be based on the failure to challenge when the disqualification arose. I thought that precise question was answered in Moore. He was tried by a special court-martial, and so was this accused. From a quotation which appears in a later portion of this opinion, it will be recognized that all members of the Court have refused to apply the doctrine of waiver in special court-martial cases.

This accused was brought before a special court-martial convened on board the USS HARVESON (DER 316), under charges of absence without authority and missing movement, in violation of Articles 86 and 87, Uniform Code of Military Justice, 50 USC §§ 680 and 681, respectively. He entered a guilty plea to the charge of absence without authority but pleaded not guilty to missing movement. A motion for a finding of not guilty to the latter charge was granted, and the court-martial imposed a sentence of bad-conduct discharge, forfeiture of $40.00 per month for two months, and confinement for two months, on the basis of the absence offense. A Navy board of review, one member dissenting, reversed the findings and set aside the conviction. The Judge Advocate General of the Navy has certified the case under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 50 USC § 654, with a request that we decide the following two issues:

"(a) Whether Lieutenant (junior grade) Richard W. Pratt, U. S. Navy, having executed Prosecution Exhibit

No. 1 (Plan of the Day for 29 October 1954) which was introduced into evidence to prove the offense alleged under Charge II (Violation of Article 87) as to which the court granted a defense motion for a finding of not guilty, became thereby ineligible to participate as a member of the court-martial which tried the accused, so as to render null and void the findings and sentence of the court as to Charge I (Violation of Article 86) as to which the accused pleaded guilty?

"(b) If the above question is answered in the affirmative, is the doctrine of waiver applicable in this case?"

Lieutenant (jg) Pratt, who sat as a member of the court-martial which tried the accused, was the command duty officer on the USS HARVESON on October 28, 1954. In that capacity, he signed the ship's Plan of the Day for October 29, 1954, the date on which the accused was charged with missing movement. In an attempt to prove that offense, trial counsel introduced into evidence the signed copy of the Plan of the Day. At the time of its admission, no reference was made to the fact that Lieutenant Pratt had signed the document, but defense counsel had elicited that fact previously from a prosecution witness who had typed the plan. Lieutenant Pratt continued, however, to serve on the court-martial, which then reached a finding of unauthorized absence, based on the accused's plea of guilty, and adjudged the sentence.

In opposition to the certificate, the accused takes the position that reversal of his conviction by the board of review must be upheld because the court-martial failed to excuse Lieutenant Pratt from the court-martial at the time trial counsel introduced the document. His assertion is that the Lieutenant thereby became a witness for the prosecution and ipso facto ineligible to participate in view of the provisions of Article 25 (*d*) (2) of the Code. This Court's decision in United States v Moore, supra, is relied upon by the defense to support that argument.

Article 25 (*d*) (2), 50 USC § 589, states in part:

". . . No person shall be eligible to sit as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case."

There is no dispute that the Plan of the Day is an official record, required to be kept by United States Navy Regulations, 1948, Chapter 8, Article 0803, paragraph 6, and admissible as such under the Manual for Courts-Martial, United States, 1951, paragraph 144*b*. However, Government counsel maintains that Lieutenant Pratt was not a witness for the prosecution because his connection with the Plan of the Day was first brought into the case by defense counsel and his testimony was favorable to the accused. From that assertion counsel reasons Pratt was, for all practical purposes, a defense witness. We cannot agree with the argument. It is true that defense counsel, in cross-examining a prosecution witness, first revealed Lieutenant Pratt's authorship of the Plan of the Day, but this did not make him a witness for the defense. He was not a witness for either side at that point as he was only a mentioned officer. He did not become a witness until the Plan of the Day was received in evidence, and since it was the trial counsel who desired to introduce, and did offer, the exhibit to support the Government's theory, the officer necessarily became a prosecution witness. Additionally, the writing admitted over his signature was not calculated to benefit the accused, nor did it in fact do so. It tended to prove the ship's sailing time and accused's actual or constructive knowledge of that movement. It was evidence aliunde the plan which disproved knowledge on his part. In the light of those facts and circumstances, we can reach no conclusion other than that Lieutenant Pratt became a witness for the prosecution when the Plan of the Day signed by him was put in evidence.

Having so decided, what we said

in United States v Moore, supra, becomes, in my view, controlling. We there stated:

". . . A witness is one whose declaration is received as evidence for any purpose, whether such declaration to be made on oral examination or affidavit. Here, the court-martial member was not called to testify but his authenticating certificate on the document was the basis for its admissibility. See United States v Masusock, 1 USCMA 32, 1 CMR 32. The Code specifically provides that one who is in that class is ineligible to participate as a member of the court-martial which hears that case. When an ineligible person participates as a court member, we believe it is fatal to both the findings and sentence. The record in the instant case, a special court-martial, shows that a total of six members participated in the trial, although only three are required by the Code and the Manual. (See Uniform Code of Military Justice, Article 16(2), 50 USC § 576; and paragraph 4b, Manual for Courts-Martial, United States, 1951.) The vote announced by the president in reporting the findings and sentence was that two-thirds of the members had concurred by secret ballot. In the light of that circumstance, we have no way of knowing how the ineligible member voted and whether his vote may have controlled the sentence imposed by the court. The accused has the statutory right to have his innocence determined and his punishment imposed by a court composed entirely of members whose qualifications meet the standards of eligibility as set forth in the Code and the Manual. A denial of that right is prejudicial."

While I confess the testimony furnished by the witness became of no importance on the missing movement offense when a motion for a finding of not guilty was sustained, I can conceive of no way in which an ineligible member is restored to eligibility by subsequent action of the court. The Manual, paragraph 63, provides:

"If at any stage of the proceedings the law officer or any member of the court is called as a witness by the prosecution, he shall, before qualifying as a witness, be excused from further duty as law officer or member, respectively, in the case."

This Manual provision is based on a flat prohibition set forth in Article 25(d)(2) of the Code. Here the trial counsel did not request, and the court on its own motion did not excuse, the officer, and the proscription of Article 25(d)(2) applied when the exhibit was received in evidence. The condemnation voiced in that Article remained throughout all subsequent proceedings, and so we are faced with a finding and sentence imposed by a court with an ineligible member sitting. That is precisely the same situation which faced us in United States v Moore, supra, and while I may have reservations concerning the wisdom of disqualifying every prosecution witness, regardless of the content of his testimony—obviously an area to be regulated solely by Congress—I have no alternative but to enforce the provision. In the view of the majority, however, the disqualification set forth in Article 25(d)(2) renders improper only the sentence imposed in this case.

To clear up one question which divided the board of review in its holding, we make a few brief observations. In its opinion, the majority of the board discussed the case of United States v Stone, decided December 22, 1954, as follows:

"The identical problem presented in this case was considered by another board of review in U. S. v Stone, 4-54-S-1158, decided 22 December 1954. In it the board discussed the Moore case and recognized its applicability under the given facts and commented upon its (the board's) extension of the doctrine to situations where the maker of an original record sits as a member of a court-martial. However, the board refused to extend the applicability of the Moore case to disqualify a court member whose signature appeared upon a plan of the day which was introduced into evidence. The board held the particular

court member's connection with the issues in the case was too remote to constitute him a witness because his signing of the plan of the day was not an assertion to the court directly or indirectly of the truth of any matter contained therein nor did the signing purport to be under the authority of his office."

Thereafter, the board refused to follow the rationale of United States v  Stone, supra. The minority member parted company because of his belief that the officer, by signing the plan, did not assert the truth of any matter contained therein. The majority members went into detail to answer that contention and we care only to augment their reasons by a few observations. Even official documents must be relevant to be admissible, and here the exhibit qualified on that ground. As to their effect, paragraph 144b of the Manual has this to say:

"An official statement in writing, whether in a regular series of records or a report, made as a record of a certain fact or event is *admissible as evidence of the fact or event* if made by an officer or other person in the performance of an official duty, imposed upon him by law, regulation, or custom, to record such fact or event and to know, or to ascertain through appropriate and trustworthy channels of information, the truth of the matter recorded." [Emphasis supplied.]

Here the plan contained an entry showing the sailing time of the vessel to be 9:00 a.m., October 29, 1954. Proof that the ship was scheduled to move and that accused had knowledge of the movement is necessary to establish the offense of missing movement. The one entry alone is evidence of the former, it could be connected up to establish the latter, and the officer is the source of that evidence. It would, therefore, appear that, at the least, the officer asserted the truthfulness of the proposed sailing time. While there was independent testimony as to the first element, it is to be remembered that a witness is

no less a witness because his testimony is corroborative.

The first question is therefore, answered in the affirmative.

The author Judge believes the second question is answered completely by our holding in United States v Moore, supra, but the two concurring Judges conclude that the plea of guilty removed the findings from the operation of that rule. The portion of that opinion which is involved is quoted:

"Apparently all members of the court-martial at the trial level were unaware of the ineligibility. Trial counsel usually has knowledge of prospective witnesses prior to trial, and generally an announcement is made to the effect that no member of the court-martial will be called as a witness by the prosecution. That representation was made in the present instance but it turned out to be violated. In addition, trial counsel read the document, including the name of the authenticating officer, and no action was taken with respect to the disqualification. Because of those facts, and because this was a special court-martial trial and accused was represented by a non-lawyer, we do not consider the doctrine of waiver applicable."

For reasons set forth in the separate opinions, the decision of the board of review is affirmed as to the sentence but reversed as to the findings. A rehearing on the sentence is directed.

QUINN, Chief Judge (concurring):

In my opinion the facts here are substantially similar to those in United States v Bound, 1 USCMA 224, 2 CMR 130. It should, therefore, be decided in the same way. However, I would limit the rehearing to the determination of an appropriate sentence.

In United States v Clisson, 5 USCMA 277, 280, 17 CMR 277, we noted that when an accused is prejudiced in regard to the sentence, it is "appropriate to return the case for corrective action to the level of proceedings at which the

error occurred." Such action, however, does not require a rehearing on the findings of guilty as well as on the sentence.

In United States v Field, 5 USCMA 379, 18 CMR 3, we sustained the practice of submitting an approved finding of guilty to a court-martial for assessment of an appropriate sentence. In that case, the accused was convicted of absence without leave and forgery. On appeal, this Court affirmed the finding of guilty of the absent without leave charge; but it set aside the forgery count and ordered that it be reheard. At the rehearing the accused was again convicted of forgery. During the sentence procedure, the law officer instructed the court that there was an outstanding, approved finding of guilty of absence without leave and that the court was to adjudge a sentence appropriate for both offenses. In the Field case we referred to a factual situation which closely parallels that here. We said (page 384):

> "Suppose, however, that the convening authority prefers another course and wishes a court-martial, and not himself, to reassess sentence solely on the basis of the findings deemed proper—all other charges having been dismissed by him. One possibility here, of course, assumes the form of revision proceedings, in conformity to Article 62, . . . but severe limitations on their use exist. . . . May he then order a rehearing limited to the reassessment of sentence? . . . We incline to believe, however, that, since—as demonstrated earlier—it is permissible for a court-martial, following rehearing, to resentence on the basis of previous findings of guilt, after acquittal as to all reheard charges, there is no reason to suppose that a similar reassessment would be erroneous in a situation in which the tainted charges were dismissed—instead of having been reheard and the accused acquitted thereunder."

BROSMAN, Judge (concurring in part and dissenting in part):

Like the Chief Judge, I see no point in going into the findings on the remand

**436**

of this case. Otherwise I find myself fully in agreement with my other associate.

## II

In United States v Beer, 6 USCMA 180, 19 CMR 306, we held that the presence of a disqual- ified court-martial member might be the subject of express waiver. This would seem to indicate that an error of this sort is not jurisdictional in character, and amounts at most to a violation of military due process. See also United States v Tombaugh, 18 CMR 733. Corroboration of this view can perhaps be secured by inquiring into the cogency of the Government's position if its lawyers had been contending that the action of the court-martial here constituted a complete nullity, and that, therefore, the court at a second trial is unlimited by the sentence originally imposed, if it finds the accused guilty. Cf. Manual for Courts-Martial, United States, 1951, paragraph 92.

In United States v Lucas, 1 USCMA 19, 1 CMR 19, one of this Court's early cases, the accused had entered a plea of guilty to a charge of absence without leave. The president of the special court-martial which tried him omitted inadvertently to supply any sort of instruction or charge—this in the face of a Manual provision requiring action of this nature "in all cases, including those in which a plea of guilty has been entered." See Manual for Courts-Martial, supra, paragraph 73b. Moreover, the court-martial did not close to deliberate on findings, nor were findings at any time arrived at formally and returned—as contemplated by Article 52 of the Code, 50 USC § 627. Instead, the president announced simply that "the specification was proven by the plea"—and thereafter the court was closed to vote on the sentence. However, we affirmed the conviction unanimously—and Judge Latimer, the organ of the Court, indicated our acceptance of the civilian rule that "A plea of guilty is a confession of guilt and equivalent to conviction. It removes from the trier of the fact any question of innocence or guilt. If the plea is

regularly made there remains only the requirement by the court of imposing an appropriate sentence." See also the two separate opinions in United States v McElroy, 3 USCMA 606, 14 CMR 24.

If this is true, and if—as I conclude—the error was nonjurisdictional, then I have difficulty in seeing why, by his plea of guilty, the accused here did not, in effect, waive all defects in the membership of the court-martial, at least so far as the *findings* are concerned. Lawyers, both civilian and military, are well-acquainted with the characteristics and effects of such a plea. They must know—in light of Lucas and other like authorities—that the plea of guilty operates to deprive an accused person of his right to urge on appeal that his conviction should be set aside because of a failure to accord him fundamental safeguards, such as instructions on the elements of the offense committed. Why then would they have reason to believe that it does not also waive all right subsequently to attack the qualifications of court members so far as their findings of guilt and innocence are concerned? After all, this is scarcely the time for us to become tender in the application of the doctrines of waiver and purgation of prejudice! Cf. United States v Fisher, 4 USCMA 152, 15 CMR 152; United States v Henry, 4 USCMA 158, 15 CMR 158; United States v Gibson, 3 USCMA 512, 13 CMR 68; United States v Ferry, 2 USCMA 326, 8 CMR 126; United States v Freeman, 2 USCMA 329, 8 CMR 129.

Furthermore, in Lucas we stated that, after a plea of guilty, the triers of fact "could not, *without violating their oaths as members of the court,* return a not guilty verdict." (Emphasis supplied) Perhaps the Government would have basis to complain of the disqualification of a court member if, after such a plea and in *violation* of his oath, he voted for acquittal. However, it could scarcely aid the accused here to say that the member concerned would be the less fit to fulfill his sworn obligation to return findings in *accordance* with the former's plea of guilty.

It will be remembered that, in the Beer case, supra, an equally defective court was permitted to function in the area of both findings *and* sentence. However, in neither civilian nor military practice is a plea of guilty directed to the strictly punitive function of the court—except insofar as it is entered pursuant to an understanding or expectation concerning the punishment to be adjudged. Therefore, it would not be anticipated by counsel that such a plea would operate as a waiver of any right relating to sentence—one of these being entitlement to punishment imposed by a court consisting solely of members qualified under the terms of the Code. Still less would the plea constitute consent to the imposition of sentence by a defective court. Cf. United States v Young, 2 USCMA 470, 9 CMR 100. Therefore, I am sure that the rationale of the Beer case does not compel us to affirm the *sentence* here as well as the findings. Cf. United States v Tombaugh, supra.

### III

Certain practical considerations support the suggestion of Judge Quinn—relying on our Field case—to the effect that no more than a rehearing on sentence need be granted. In many instances by the time a rehearing is held, the Government's witnesses will have been dispersed and its evidence dissipated. Taking advantage of that circumstance, an accused who had entered a plea of guilty at his first trial—and thereby virtually requested conviction—may elect, on advice of counsel, to plead differently at the second proceeding, assuming that guilt is to be relitigated. In such event, the unavailability of evidence may operate to yield an acquittal—and so, by reason of considerations which touch him not at all, a judicially confessed criminal comes to gain a windfall. Of course, in the present case this danger is slight, for it appears that means are ready to hand which would establish the present accused's guilt, were a rehearing thereon to be granted him. However, we are not declaring law for McBride alone.

In this connection let me hark back to the language of my separate concurrence in Beer, supra: "I am sure

**437**

that in the Moore case we went as far as we should in requiring the excuse of court-martial members for what in most instances are purely technical and formal reasons." Thus, I am constrained here to accept Judge Quinn's position.