UNITED STATES, Appellee

v

JACOB W. SAUCIER, Yeoman Seaman Recruit,
U. S. Navy, Appellant

17 USCMA 558, 38 CMR 356

No. 20,764

May 24, 1968

Lieutenant Robert F. Baldwin, USNR, argued the cause for Appellant, Accused.

Lieutenant William A. Carnahan, USNR, argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel C. R. Larouche, USMC, and Commander Walter F. Brown, USN.

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a special court-martial convened at Headquarters Commandant Fourteenth Naval District, Honolulu, Hawaii, charged with absence without leave, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. He pleaded guilty and was found guilty as charged. He was sentenced to a bad-conduct discharge, forfeiture of $86.00 per month for three months,

558

and confinement at hard labor for three months. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, forfeiture of $64.00 per month for three months, and confinement at hard labor for a like period. Thereafter, the supervisory authority approved the sentence as mitigated. A board of review in the office of the Judge Advocate General of the Navy affirmed the findings of guilty and the sentence. This Court has since granted review to determine:

"Whether the president of the court-martial was disqualified due to his pretrial activity."

In the case before us, trial counsel, defense counsel, and the president—lawyers all—operated as a trial team out of the Fourteenth Naval District. As a matter of practice, they are recommended for such duty by the District Legal Officer at the suggestion of an assistant, following request by a convening authority. The latter, thereafter, appoints the team to the court.

Here, a Lieutenant Taylor made contact, in behalf of his own commanding officer, with Lieutenant Commander Woods, an Assistant Legal Officer in the District Legal Office, to arrange for such a team. The latter held the responsibility of making recommendations to his superior as to the need for such a team—need being dependent upon the complexities of the individual case and the commander's determination as to whether the team had sufficient experience to handle the problems involved. Ultimate recommendation of this troika, however, remained the province of the District Legal Officer.

In this instance, Lieutenant Commander Woods made such a recommendation after discussing "generalities" concerning Saucier's derelictions first with Lieutenant Taylor and then with his own superior. It must further be said that throughout the *voir dire* examination conducted by defense counsel, Lieutenant Commander Woods insisted he had then formed no opinion as to the guilt or innocence of the accused, he had never discussed the specifics of the case, and he had remembered none of its details. In sum, he described his involvement in the proceeding as purely "ministerial."

Be that as it may, a trial team was appointed and did participate in the trial of this case. The issue at hand arises by virtue of the fact that Lieutenant Commander Woods subsequently became an assigned member of this triumverate and sat throughout as president of this court-martial.

Appellate Government counsel take the view that prior knowledge of facts surrounding accused's misconduct, gathered during the performance of normal duties as Assistant Legal Officer, do not constitute grounds for disqualifying Lieutenant Commander Woods. His pretrial activities and subsequent participation are said to differ from those instances where individuals have "affirmatively sought out witness to or circumstances surrounding an event for aiding their investigatory activities." Furthermore, say appellate Government counsel, the issue at hand can be focused only upon the sentencing aspects of the case for, by his plea of guilty, accused waived all claims of defects in the court's composition. In any event, Government counsel deem the problem academic in light of the accused's "intelligent and conscious waiver of any right to question the president's eligibility to participate."

Appellate defense counsel, on the other hand, contends that the commander's pretrial activities make him an "investigating officer" and thereby preclude him, as a matter of law, from acting as president of the court. It is said, in this regard, that his removal for cause is self-executing under Manual for Courts-Martial, United States, 1951, paragraph 62c. Thus, so the argument goes, failure of defense to object does not constitute waiver.

Generally speaking, however, prior knowledge by a court member of an accused's purported misconduct does not of itself constitute ground for a challenge. United States v Talbott, 12 USCMA 446, 449, 31 CMR 32. Referring to United States v Fry, 7 USCMA

682, 23 CMR 146, we said in *Talbott*, supra:

"'. . . The touchstone for ineligibility, therefore, is not mere knowledge of the evidence, but the effect that it has. If it produces a conviction of guilt, challenge for cause clearly exists. Manual for Courts-Martial, United States, 1951, paragraph 62*f* (10). United States v Dean, 5 USCMA 44, 17 CMR 44.'"

Appellate Government counsel agree and consider this the appropriate test which must, when applied to the facts of this case, result in the approval of Lieutenant Commander Woods' dual role.

Separate and apart, however, are the limitations of Article 25 (d) (2), Code, supra, 10 USC § 825. Cf. United States v Fry, supra. The impartiality of court-martial membership is there further assured by the requirement that:

"'. . . No member of an armed force is eligible to serve as a member of a general or special court-martial when he is the accuser or a witness for the prosecution *or has acted as investigating officer or as counsel in the same case.*" [Emphasis supplied.]

The italicized portion of this codal provision, we noted in United States v Burkhalter, 17 USCMA 266, 268, 38 CMR 64, encompasses not only those formally appointed as investigating officers but also any other individual "'who . . . has conducted a personal investigation of a general matter involving the particular offense.'" Manual for Courts-Martial, United States, 1951, paragraph 64. To the same effect, see United States v Lee, 1 USCMA 212, 2 CMR 118, and United States v Bound, 1 USCMA 224, 2 CMR 130." Thus, both an information officer who, in keeping with his duties, gathered and disseminated news and an officer on security watch, who investigated an incident later made the basis for charges, have been placed in this restrictive category. United States v Bound, 1 USCMA 224, 2 CMR 130; United States v Burkhalter, supra. In each, we reasoned:

"... there is 'no logical escape from the conclusion' that he thereby officially investigated the case against accused and, thus, constituted himself an 'investigating officer.'" [United States v Burkhalter, supra, at page 268.]

The president of this special court-martial must be similarly identified. Despite this, we view the creation of trial teams for special courts-martial as a laudable endeavor intended for the protection of the accused. It is a plan, therefore, that has this Court's endorsement. We do, however, disavow the application of the concept by the means here employed.

Prior to trial Lieutenant Commander Woods became acquainted with the nature of the charge placed against Saucier. Moreover, he and Lieutenant Taylor considered the accused's service record and were to some degree certain of the factual matter involved. This appears clear for the former's recommendation was dependent in part on the complexities of the case. Taken *in toto*, we believe the commander became an investigating officer within the proscription of Article 25(d)(2), supra. It is obvious, therefore, that he should not have later acted as president of the court-martial of this accused. United States v Burkhalter, supra. We are convinced, moreover, that the nature of this error requires reversal of both the finding and sentence.

The Government, pointing to defense counsel's *voir dire* examination and subsequent failure to challenge the president, urges upon us the application of waiver. Without burdening ourselves with the distinction, if any, between a member subject to challenge and one who is disqualified under Article 25(d)(2), supra—compare United States v Law, 10 USCMA 573, 28 CMR 139, with United States v Renton, 8 USCMA 697, 25 CMR 201—suffice it to say that we are unwilling to charge the accused with the actions of counsel when a member of the same trial team as the president. Personalities aside, under the particular circumstances of this case, when the dis-

qualified officer sits as both judge and juror, we reject the notion that waiver may play any part in the proceedings.

Accordingly, the decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

I agree that the president of the special court-martial should have been excused. However, in similar circumstances we have held that the accused's voluntary plea of guilty eliminated any possibility of prejudice as to the findings of guilty. United States v McBride, 6 USCMA 430, 20 CMR 146; see also United States v Johnson, 14 USCMA 548, 551, 34 CMR 328. I would, therefore, set aside only the sentence.